Mr. Justice WOODBURY
 

 delivered the opinion of the court.
 

 This case comes before us on a certificate of a division of opinion between the judges of the.Circuit Court in the-District of Illinois.
 

 A preliminary question has. arisen as to our jurisdiction, which first deserves attention.
 

 The proceedings in the court below were a bill, filed on the 19th of April, 1845, by the United States against the city of Chicago, to obtain an injunction not to lay out. certain streets through land belonging to the United States, which the city was preparing to open.
 

 
 *191
 
 Before the return day a temporary injunction was issued, and when the term arrived, a motion was made to continue that injunction till the merits of the bill were decided. No answer had been put in to the merits, but a hearing was had on affidavits as to the motion, and in that hearing the division of opinion occurred which is now before us.
 

 Two leading objections have been suggested to our jurisdiction over the matter. • One is, that the division arose, not. in a hearing of the merits, but of a preliminary motion, resting in the discretion of the court; and the other is, that several questions are certified, covering the whole case rather than a single point.
 

 . . In respect to the first objection, we do not propose to decide whether the grant of a preliminary and temporary injunction is a matter of discretion merely, rather than of right. Because, whichever it may be, the questions of division presented here are not those on matters of mere discretion in the court below, but involve the right of the United States in the land proposed to be laid out' as a street by the city. The adjudged cases, where a certificate has not been sustained on account of some discretion connected with the subject, are chiefly those where the question presented involved merely a matter of discretion, rather than arising in the consideration of a motion or point, which was one of discretion. (Smith
 
 v.
 
 Vaughan, 10 Peters, 366; Packer v. Nixon, 10 Peters, 411.) It must be obvious, that, in deciding a matter of discretion, a point may arise which is one of right and very materia). Other cases not sustained were decided on the ground that they occurred after the merits of the cause were decided, and in proceedings subsequent thereto, whether discretionary cr not. (Bank of United States
 
 v.
 
 Green, 6 Peters, 28; United States
 
 v.
 
 Daniel, 6 Wheat. 548 Devereaux
 
 v.
 
 Marr, 12 Wheat. 212; 5 Cranch, 11, 187; 4 Wash. C C. 333.) The act of Congress seems to roach only matter arising in the progress of the cause, and not afterwards, because the proviso is, “that nothing herein contained shall prevent the cause from proceeding,” &c., and hence implies it must be in the progress of the cause. See Act of Congress, April 29th, 1802, 2 Stat. at Large, 159, 160; 6 Wheat. 548. But the present question, occuning before "a final decision, comes expressly within the words of the law, — “that whenever any question shall occur before a Cireuit Court, upon which the opinions of the judges shall be opposed, the point ” of disagreement shall be certified, Ac. (2 Stat. at Large, 159.) And this provision, manifestly, is broad enough to cover any material question of right thus arising, whether the subject on hearing was one of discretion or of right.
 

 
 *192
 
 Tire sécond ground of objection, that these questions are several in number, and so material as to decide the whole cause, might prevail, if they had not arisen at one time, at one stage in the cause, and involved little beyond one point. Because, if they are several in number and apply to different stages of the trial, and relate to independent points, they are generally •not proper. United States
 
 v.
 
 Baily, 9 Peters,
 
 267; Nesmith v.
 
 Sheldon, 6 How. 43; White
 
 v.
 
 Turk, 12 Peters, 238; United States
 
 v.
 
 Stone, 14 Peters, 524; Saunders
 
 v.
 
 Gould, 4 Peters, 392; Grant
 
 v.
 
 Raymond, 6 Peters, 218.
 

 ■ That these three questions require an opinion virtually on .only one point, namely, the right of the United States to the place proposed to be opened as a street, is manifest, when we see that the decision of this one way disposes, of them all, and of the whole case. And the principle embracetPin-. the other branch of this objection, to acting on several points which dispose of the whole case, is, not that the whole case may not properly be disposed of by-our decision on what is certified, but that the decision must in substance be, not on several questions arising in various stages of th„ cause, and some of them anticipated and presented, so as to cover the whole case. Leland
 
 v.
 
 Wilkinson, 10 Peters, 294.
 

 There has justly been a leaning in this court to decline jurisdiction in cases of decisions below where it is doubtful ; because the power vested hére in such cases, "it is believed, was meant to be muchi more restricted than is often practised, and is in the most favorable view rather an anomaly. But by considering questions, if certified here, only when real divisions of opinion occur on them, and at one and the same time, no danger exists of extending this branch of our jurisdiction beyond what Congress intended. On. the contrary, it is divisions of opinion
 
 pro forma,
 
 and from courtesy to counsel,.and on a variety of points, and at times, some not then having actually arisen, but being anticipated, which appear-to transcend the original design of vesting such a power here.
 

 We have, therefore, for several years, declined to consider a certificate of such a variety of points so arising. (See cases before cited.-) Arid although an indulgence has sometimes been given to certificates, where, in important cases, a division was certified
 
 pro forma
 
 (Jones
 
 v.
 
 Van Zandt, 5 How. 224), yet we do not feel justified in repeating it.
 

 To proceed to a consideration of the principal matter involved in these questions, it will be necessary first to advert briefly to some of the admitted facts in the case.
 

 The United States became the owners of ,the land occupied, by Fort Dearborn, near Chicago, in the State of Illinois, under
 
 *193
 
 the original cession of the Northwest Territory. It was occasionally a station for troops from 1804 to 1824, when, the whole fractional quarter-section on which the fort stood was reserved by the General Land Office for military purposes, on the application of the Secretary of War. See . Wilcox
 
 v.
 
 Jackson, 13 Peters, 502. In that case, which is better known as the Be’aubean- claim, this court decided that this was a legal appropriation of that quarter-section of land to a public purpose, and exempted it from the rules as to the mass of public lands and their usual liabilities.,
 

 Prom that time till A. D. 1839 it was occasionally occupied as a fort by the. United States, and a light-house was erected on it under the authority of Congress, when the Secretary of War, thinking that a portion of the same might' be sold without injury to the public interests, proceeded, with the approbation of the President, to make such a sale, under the act of Congress of March 3d, 1819. (3 Stat. at Large, 520.)
 

 He did this by an agent, who first made a plan of the whole quarter-section, calling it “Fort Dearborn addition to Chicago,” and laying it dowfi in lots, without exhibiting on it ,any buildings or reservations. But he did not sell the whole, the government not then concluding to part with the fort, or land and buildings immediately contiguous. On that plan certain streets were also laid down running into the whole quarter-section. .The sales, however, being made of only the lots and land-, outside of what was reserved, the United States allowed the? proposed streets only so far as there laid down to be opened by the city of Chicago, and used by the adjoining owners, in> conformity to the plan. And when the city undertook to opém the streets within the line of reservation, and where no sales-of land had been made, and where opening them would prostrate some of the. public buildings, and materially injure and impair the public uses of the station, the United States applied for the injunction before named..
 

 On the motion to continue the temporary injunction till the hill was answered and heard, the judges being opposed in opinion on the right of the city to open streets on the public land of the United States situated like this, the three questions-certified were in form: —
 

 “ 1st. Whether the corporate powers of the city of Chicago have a right to open the streets through that part of the' ground laid out in lots and streets, hut not sold by the government.
 

 “
 
 2d. Whether the corporate powers of the city are lot limited to -that part of the plat which, by sale of the government, has become private property.
 

 
 *194
 
 “ 3d. Whether the streets laid oat and dedicated to public use by Birchard were not, by his surveying the land into lots and streets, making and recording a map or plat thereof, did not convey the legal estate in the streets to the city of Chicago, and thereby made the ground embraced by said streets ‘private property,’ so as to authorize said city of Chicago to keep said streets open.”
 

 But, as has been explained, the whole of them in substance depend upon the extent and character of the rights of the United States in the place where the new streets.were proposed to be opened. What, then, were those rights ? 1st. The place was where the title of the government had never been parted with, after the original cession. 2d. lfr was where the land' had been- appropriated and legally set apart for a special public use. 3d. It was where the opening of these streets would essentially impair, if not destroy, that public use. 4th. It was where streets had never been opened and used, or actually dedicated in that way to purchasers of land there, or to’ the community in that neighbourhood. 5th. It was where the city charter, by its act of incorporation, did not extend, as the charter expressly excepted from its limits
 
 “
 
 the southwest fractional (quarter of section ten, occupied as a military post, till the same shall become private property.”
 

 Now, though this court possesses a strong disposition to sustain the rights of the States, and local authorities claiming under them, when clearly not ceded, or when clearly reserved, yet it is equally our duty to support the general government in the exercise of all which is plainly granted to it and is necessary for the efficient discharge of the great powers intrusted to it by the people and the States. The erection of forts belongs to one of those powers, and the building and employment of light-houses belongs to another.
 

 Under the circumstances of this case just recited, .then, very clear facts or principles must exist, which impair the rights of the United States, before streets can be opened upon their soil, when situated, reserved, and used as this is.
 

 It is not questioned that land within a State purchased by the Unitedr States as a mere proprietor, and not reserved or appropriated to any special purpose, may be liable
 
 to
 
 condemnation for streets or highways, like the land of other proprietors, under the rights of eminent domain.
 

 But that was not the condition of this quarter-section, being a part of' the land originally ceded to the United States as the Northwest Territory, and afterwards specially set apart for their use for military purposes. Here the opening of these streets would, also, injure, if not destroy, the great objects of
 
 *195
 
 the reservation. Nor was any compensation proposed or made, as in other cases, for condemning this land and damaging the buildings thereon. ' It seenis, too,, that, though land purchased within a State for ordinary purposes by the general government must yield to the local public demands, yet land, when held like this, at first by an original cession to that government, and afterwards appropriated for a specific public object, cannot easily be shown liable to be taken away for an ordinary local object, though public, and especially one under another government and by mere implication. (United States
 
 v.
 
 Ames, 1 Woodb. & Min. 88.)
 

 It'must be for a public object, clearly superior or paramount, or to' which preference is- expressly given by law or the Constitution, in order to make the right clear to seize and condemn land so situated. West River Bridge
 
 v.
 
 Dix, 6 Howard; 543, 544, and cases there cited; 4 Gill & Johns. 108, 150.
 

 But the correctness of this proposition, being, open to some debate, is not further explained, nor is it decided here, because not necessary to a disposition of the case.
 

 On other grounds, the idea seems entirely untenable which is entertained by the city and presented in one of the questions, that, because streets had been laid down on the plan by the agent, parts of which extended into the land not sold, those parts had, by this alone, become dedicated as highways, and the United States had become estopped to object.
 

 Persons who looked only at this plan, and did not know that all of the quarter-section was not then to be sold, might be misled in their opinion or expectation how far some of the streets might extend. And if becoming purchasers, such persons might have given something more, under an impression that their lots were on a street which would be longer and more important.
 

 But the bill avers, that the agent, at the time of the sale, gave notice that the lots within the line of reservation were not to be sold. How, then, could a right to open streets there pass, or purchasers be misled ? The streets could not. pass as an appurtenant to the side lots
 
 there;
 
 because they were not sold. The streets did not pass by any deed of them, or of any easement or servitude in them, as none was made. There had been, also, no condemnation of them for public ways.
 

 It is said, however, and justly, that land may be dedicated by the owner to highways, and without deed or much formality. Thus', if one allows his land long to be occupied by the public as a.-.high way, such a dedication may . be presumed. McGonnel
 
 v.
 
 The Trustees of Lexington, 12 Wheat. 582. So if the actual user has not been long, but clearly acquiesced in. Jarvis
 
 *196
 

 v.
 
 Dean, 3 Bingham, 447; 1 Camp. 262; City of Cincinnati
 
 v.
 
 White, 6 Pet. 431. Só if one makes a map of land proposed to be sold, with streets contiguous and for the accommodation of side owners, and sells accordingly, it may generally be presumed that he thus dedicates the land contiguous for the streets. See Matter of Thirty-second Street, 19 Wend. 128; Wyman
 
 v.
 
 Mayor of New York, 11 Wend. 486; Lewis Street, 2 Wend. 473; 8 Wend. 85. And certainly, if he allows theiñ afterwards to he so occupied. 6 Pet. 431.
 

 But here, as before shown, no such occupation had been allowed-within the reserved line, nor any such sale made there of the contiguous lots. On the contrary, all the streets so laid down on the plan, where the lots contiguous were sold, have been allowed to be opened without opposition by the United States. And it is entirely unsupported by principle or precedent, that an agent, merely by protracting on the plan those streets into the reserved line and amidst lands not sold, nor meant then to be' sold, but expressly reserved, could deprive the United States of its title to its real estate, and to its important public wc rks. • Nor, under such' circumstances, have the purchasers of land elsewhere, or the city, any equitable ground of complaint, that the streets thus protracted on paper are not opened.
 

 Let the opinion of this court, then, be certified in conformity to these views, which will be, as applied to the questions formally, in the negative as to the first and third, and in the affirmative as to the second.
 

 Mr. Justice CATRON,
 

 dissenting.
 

 On a bill in equity being presented by the United States to the district judge, he granted an injunction against the city of Chicago, to restrain the corporation from running a street through the public property attached to a military post within the corporate\limits. By the act of February 1st, 1807, injunctions granted by. district judges in vacation only remain in force until the next term of the Circuit Court. Accordingly, at the next term a motion was made, to continue the injunction granted by the district judge, and the judges were opposed in opinion whether an injunction should or should not be granted. The entire matters of law and fact arising on the face of the bill, and on affidavits and documents introduced by the defendant to resist the motion, were sent up to this court, covered by three points, on. which the judges assume to have been opposed. And the motion to renew the injunction is presented to us, as it .was to the Circuit Court. And the. question is, Have we any power to grant the injunction ? By the Constitu
 
 *197
 
 tion, the judicial power is vested in the Supreme. Court, and such inferior courts as the Congress may from time to time ordaiu and establish. In cases affecting public ministers and consuls of other countries, and in cases where States are the parties, this court has original jurisdiction.. In all other cases, the Constitution provides, the Supreme Court shall have appellate jurisdiction, both as to law and fact, with such exceptions and under such regulations as the Congress shall make. That is to say, with Such' exceptions to the exercise of appellate jurisdiction as Congress shall interpose ; as that no cause shall come up, unless the matter in controversy exceeds the sum or value of two thousand dollars, nor shall a writ of error lie in a criminal cause, nor from a District Court, &c. ' That the original jurisdiction of the Supreme Court is limited to the two classes of cases above referred to was held by this court in Marbury
 
 v.
 
 Madison, 1 Cranch, 174. Is, then, the granting an injunction an exercise of original jurisdiction ? It may be done out of court by the circuit judge ; and so an expired injunction may be renewed at any time by him, the courts of equity being always open for such purpose by our present rules. This bill and affidavits are placed before us as they were before the Circuit Court, and for the same purpose, of founding an original motion on them, thereby to procure an order for the restraining writ to issue. We are asked to take an original, incipient step, as the court below was, before any answer is filed, and before any thing could be adjudged between the parties by the Circuit Court, so as to bind their rights.
 

 What is appellate jurisdiction in the sense of the Constitution ? Our practice under the thirteenth section of the Judiciary Act of 1789 has settled the meaning of the term. It is to reexamine, and to reverse or affirm, the judgment, sentence, order, or decree of an inferior court, — to pass on that which has been adjudged. Here, nothing was adjudged in the court below.
 

 From the threatening nature of this precedent, it is deemed improper to pass over it unnoticed, as I have done in other cases. If a division can be certified in this instance, so there may be in every other where ah injunction is applied for in opeu court, and the judges see proper to send us the cause, — for as to real divisions, they hardly exist' at present. The cases are sent here by agreement of counsel, with the assent of the Circuit Court, usually without any examination below.
 

 I, therefore, am of opinion, that we have no jurisdiction, and that the-matter before us should-be dismissed.
 

 Order.
 

 This cause came on to be heard on the transcript of the rec
 
 *198
 
 •ord of the Circuit Court of the United States for. the District of Illinois, and on the points and questions on which the judges of the said Circuit Court were opposed in opinion, and which were certified to this court for its opinion, agreeably to the act of Congress in such case made and provided, and was argued by counsel. On consideration whereof, it is the opinion of this court, — 1st. That the corporate powers of the city of Chicago have no right to open the streets through that part of the ground laid out into lots and streets, but not sold by the government. £d. That the corporate powers of the city are limited to that part of the plat which, by sale of the government, has become private property. And 3d. That the streets lajd out and dedicated to public use.by Birchard, by his surveying the land into lots and streets, and making and recording a map or plat thereof, did not convey the legal estate in the streets to the city of Chicago, and thereby make the ground- embraced by said streets “ private property,” so as to authorize said city of Chingo to keep said streets open. Whereupon, it is now here ordered and decreed by this court, that it be so certified to the said Circuit Court.