## T. D. ISOM *v.* THE HEIRS OF JAMES McGEHEE.

1. CHANCERY COURT — SCIRE FACIAS TO REVIVE DECREE RENDERED IN PROBATE COURT. — Where a decree was rendered by a probate court, but not satisfied before the transfer to the chancery courts of the jurisdiction of the probate courts, and a year and a day had elapsed, after the decree and before execution issued, *scire facias* is the proper remedy to revive the decree.

2. SAME — SAME. — While it is true that *scire facias* to revive decrees does not obtain in chancery practice proper, this remedy is appropriate to revive decrees rendered by the probate courts, because the transfer to the several chancery courts of the unfinished business of the probate courts carried with it all the agencies employed by the latter courts in the prosecution of causes therein, among which was the writ of *scire facias* for the revival and renewal of judgments. In such cases the *scire facias* is but the continuation of the original proceedings.

3. PROBATE COURT — FINAL DECREE. — A decree of the probate court which ascertained the sum due from an administrator and directed its payment to those entitled to it, is such decree as may be enforced by execution, although it does not in terms award execution.

4. CHANCERY COURT — JURISDICTION TO ENFORCE DECREES MADE ON FINAL SETTLEMENTS OF ADMINISTRATORS BY PROBATE COURTS. — The chancery courts have jurisdiction of decrees rendered by the probate courts against administrators, and which were unexecuted at the time of the transfer of the jurisdiction of the latter to the former. A final decree of the probate court against an administrator did not discharge him, nor terminate the jurisdiction of the court. The power existed to enforce the decree, and such power, as to unexecuted decrees of the probate courts, passed to the chancery courts.

5. SAME — FINAL DECREE — EXECUTION. — Where an administrator submitted his final account and certain distributees were cited by publication, and a certain sum in the hands of the administrator was decreed to these distributees, who did not ask the aid of the court: *Held*, On its being objected that such decree was invalid, as the basis of an execution in favor of said distributees, that it was proper and enforceable by execution. On final settlement, though sought by the administrator, it is proper for the court to decree to the parties entitled what is found in the hands of the administrator.

APPEAL from the chancery court of Lafayette county. STEARNS, Chancellor.

The facts of this case will be found fully presented in the arguments of counsel, and the opinion of the court.

*H. A. Barr*, for appellant.

1. All causes and proceedings remaining undisposed of in the probate courts are required to be determined in the chancery courts. Act of 1870, p. 54. But the administration

of appellant was completed and concluded by his final settlement. There was nothing left undisposed of by the probate court. The jurisdiction of the probate court continued until the final settlement, and then it completely ceased. Davis et al. v. Cheves, 32 Miss. 318; Lowery v. McMillan et al., 35 ib. 147. Hence, it is clear that the chancery court had no jurisdiction.

2. The decree of the probate court was a mere decree of final settlement and distribution. It does not direct or authorize an execution, nor a term to which an execution may be made returnable. The probate court could not have rendered any judgment upon which an execution could emanate upon the proceedings before it. The application for the final settlement was by appellant, and appellees were made parties by publication. Appellees did not seek the aid of the court; hence the court could not have rendered a judgment in their favor. Courts can only give judgment in favor of those who seek their aid. Dowd v. Morgan et al., 23 Miss. 587. Hence, the *scire facias* to show cause why judgment should not be revived, and an execution issue, had no basis upon which it could rest.

3. But the writ of *scire facias* is not in use now in chancery courts. It is obsolete. It was anciently the practice to revive decrees by subpœna in the nature of a *scire facias*, but it has become the practice to revive in all cases, indiscriminately, by bill of revivor. Story's Eq. Plead., § 366.

*Charles B. Howry*, for appellees.

1. In answer to the first cause of demurrer we submit that it is not necessary to its validity that the judgment or decree should award an execution. The demurrer admits an entry of a decree, otherwise valid, and practically asserts that the omission of the award of an execution renders the whole inoperative. Yet the clerks of all courts of law and equity in this state, unless otherwise ordered by the plaintiff, are required, and were required at the time

of the judgment in this case, to issue executions on all judgments or decrees rendered in said courts within thirty days after the adjournment of the term. Rev. Code of 1857, art. 265, p. 525. The decree of the court, in this case, was for the payment of a sum of money by an administrator to distributees. The right to enforce the demand and to compel an immediate compliance with the terms of the decree by process of *fieri facias* necessarily existed. Code of 1857, art. 31, p. 431.

2. If, in the first instance, an execution could be issued to enforce the decree, it must necessarily follow, as a legal consequence, that, upon the failure of the clerk to do what the law required him to do, the beneficiaries in the decree may afterward obtain the benefit thereof by *scire facias.* To contend otherwise is practically asserting that the laches and neglect of the clerk is an estoppel in bar of the rights of judgment creditors in very many instances. *Scire facias* is simply judicial process, founded upon some record, and when brought to revive a judgment after a year and a day, or when brought to revive a judgment against an executor or an administrator, it is but a continuation of the original action. Bac. Abr., title Execution ; 2 Bouv. Law Dic. 499. The renewal of a judgment by *scire facias* is not limited to any particular court, under our judicial system. See Code 1857, art. 73, p. 490 ; see, also, p. 525.

The position taken by counsel, that, unless appellees sought the aid of the court, a judgment could not have been rendered in their favor, is certainly a novel proposition in a case like this. If heirs must, in all cases, petition the courts for the final settlement of the accounts of administrators, then the statutes are simply inoperative. Art. 106, Code 1857, p. 451. According to the theory contended for by counsel, any decree based on proceedings instituted by administrators, under the provisions of the article in question, is a nullity. It is well known that heirs and distributees often refrain from instituting proceedings against admin-

istrators, from the very fact of their promises to such heirs
that they will at once obtain a decree for distribution.  And,
if this is done, will it be contended that such decree is
inoperative and invalid, and that, by circuity of action,
heirs must seek another forum in the effort to obtain their
rights ?  The case of Dowd v. Morgan et al., so greatly
relied on by counsel, is not in point in these proceedings.
In that case, the court say, had the judgment been rendered
upon a proper proceeding, by the acting guardian, it would
have been right and proper.  Had the judgment been asked
by the guardian there, as by the administrator here, it
would have stood as legal and proper.

3.  Was complainant's remedy at law ?  We submit, not
necessarily.  An administrator is but a trustee for creditors
and distributees.  It is a well-established principle that the
office of a trustee ceases only with the final execution of his
trust.  The power did not exist in the probate court, nor
does it exist in the chancery court now, to discharge an
administrator from his trust upon the mere settlement of
his final account, and without a final distribution.  Hender-
son v. Winchester, 31 Miss. 295, 296.  This is the very
thing appellant seeks to accomplish by his demurrer.  He
was and is yet a trustee.  The appellees are distributees or
*cestuis que trustent.*  The administrator seeks a discharge
without a final distribution.  The control of the court hav-
ing charge of the settlement and final distribution of estates
continues until that distribution is made.  Denson v.
Denson, 7 How. ;  33 Miss. 565 ;  32 ib. 120, 318.

Tarbell, J. :

S. H. McGehee and others, heirs of Meredith McGehee,
deceased, in the chancery court of Lafayette county,
sought by *scire facias* to revive a decree of the probate
court of that county for the payment of money and for
execution against Thomas D. Isom, administrator of the
estate of said Meredith McGehee, deceased.  The decree
sought to be revived was rendered in 1867, and recites that

personal service of citations having been made upon the resident parties interested, and publication had as to the non-residents, thereupon came on to be heard the final account and settlement of said Thos. D. Isom, administrator aforesaid. The account having been stated and settled, the decree concludes as follows : "That there is due from said administrator, to the children of Charlotte McCan, the sum $1,333 29, to be equally divided among them, and that there is due from said administrator to the children of James McGehee, the sum of $833 29, to be equally divided among them. It is ordered, adjudged and decreed by the court, that said administrator do pay the said last two sums of money to said parties, to whom it is due as aforesaid, and that said administrator be discharged from his said administration."

*Scire facias* was issued and served in October, 1870, returnable to the then next term of the chancery court of Lafayette county. The defendant therein demurred, averring the following causes : that the records of the probate court do not show a judgment or a decree awarding an execution. The decree of the probate court cannot be revived by *scire facias ;* the remedy of complainant is at law and not in chancery. The demurrer was overruled, with leave to defendant to answer, from which decree an appeal was prayed and granted. In this court the only error assigned is the action of the court in overruling the demurrer.

It is true that the writ of *scire facias* is unknown in chancery practice ; but it must be observed that our chancery court, as now organized, possesses a double jurisdiction, one based upon the ancient and honored landmarks of equity, and the other embracing the duties lately exercised by the court of probates. Const. of 1868, 1869, art. 6, § 16 ; Const. of 1832, §§ 16, 18. The chancery court law of 1870, § 25, provides "that all causes and proceedings remaining undisposed of in the chancery, or court of probates of each county shall be transferred to the chancery court of the county,

which court shall proceed to hear and determine the same
according to the principles of law and equity applicable
thereto." This statute not only transfers the undetermined
business in the court of probate remaining at the time of
the change of our judicial system in 1870, to be concluded
in the chancery courts newly organized, but it transferred
also all the agencies employed by the former courts in the
prosecution of causes therein ; among which was the writ of
*scire facias* for the revival and renewal of judgments. Code
of 1857, p. 490, art. 73 ; 27 Miss. 786. In such case the
*scire facias* is but the continuation of the original proceed-
ing. Bowen v. Bonner, *supra*, p. 10. Of the several classes
of cases wherein *scire facias* is the proper remedy, the one
of which there is no question, is the non-issuance of an
execution for a year and a day on a judgment in a court
of law. 3 Smedes & Marsh. 1. To this extent the proceeding
in this case was regular and appropriate. To the objection
that *scire facias* is unauthorized in chancery, we remark
that, upon general principles, the objection would be well
taken ; but, in our opinion, it is unobjectionable, and, in
fact, is authorized in the conclusion of cases originating in
the late court of probates. The writ is simple, precisely
adopted to the circumstances ; it states the judgment or
decree sought to be revived, with a prayer for revival and
for execution, and notice to the party against whom it
issues, to show cause, on a day named, why its prayer
should not be granted ; it fully meets the exigencies of the
case, and does so at once in a precise, plain and practical
mode, suited to the facts and to the simplicity of our prac-
tice in probate cases. We shall not be understood as
engrafting the writ of *scire facias* upon our equity jurispru-
dence, or of introducing it into our chancery courts as
recently created, beyond the precise cases herein indicated.
Keeping in view, therefore, the distinction between chancery
and probate jurisdictions lately entertained, and the former
remains intact.

To the objection that the decree of the probate court does

not award an execution, it is only necessary to say that this point presents a question no longer an open one in this state, even if ever tenable, which is doubtful. Tonena & Snyder v. Kerr, 27 Miss. 786 ; Scott v. Porter, 44 ib. 364. And besides, the Code, 431, art. 31, furnishes an absolute answer to this point.

The court in Tonena & Snyder v. Kerr, says: "It was objected in the court below, both by demurrer and plea to the *scire facias*, that the decree was not final, and could not therefore be revived. The court overruled this objection and made an order reviving the decree against the appellants, as administrators of said Carbry, which order, in our opinion, is entirely free from objection. The decree was made upon Carbry's own account, and all parties were at his instance brought before the court, to show cause why it should not be made just as it was made. It was intended to ascertain the amount of his indebtedness to the distributees of Kerr's estate ; this, the decree, in the clearest manner, does ; and it goes further and orders the sum so ascertained to be paid to said distributees. It is in every respect a decree which might have been enforced, either by execution or by attachment, which is the best test of the finality of the decree." The case referred to, as in the one at bar, was one of final settlement of the administrator's account, at his own request, all the parties interested being brought before the court by citation, in that case also, as in the one at bar, the decree did not in words award an execution, but did direct the payment of a sum certain in money. The language of the decrees in the two cases, the one quoted and the one at bar, is almost identical, the only difference in the two cases being the death of the executor in the former, against whom the decree sought to be revived was made.

Although the case at bar is thus substantially disposed of, it may be well to refer briefly to some of the points in the argument of counsel.

1. Contrary to such argument, the proceedings in this instance, first undertaken in the probate court, were undis-

posed of at the date of the adoption of the new constitution and the passage of the chancery court law of 1870, as the administration was incomplete and unfinished, and the trust continued until the payment of the money, in the hands of the administrator, to those entitled thereto, in obedience to the orders of the court. The jurisdiction of the probate court did not terminate with the final settlement, because the administrator still held funds in his hands for distribution, which the court decreed him to pay. Until payment, the administration, the trust, and the jurisdiction of the probate court remained. Dunson v. Dunson, 33 Miss. 560 ; Henderson v. Winchester, 31 ib. 290 ; Davis v. Cheeves, 32 ib. 318 ; Smith v. Hurd, 7 How. 188.

Lowry v. McMillan, 35 Miss. 147, does not sustain the views of counsel. In that case the administrator had paid over all the assets in his hands to the persons adjudged by the court to be entitled to the same, and, having acted in good faith, he was protected by the judgment of the court. The question was upon the effect of the judgment of the court in protecting the administrator. The administration was closed, in fact, by the disposition of the entire estate according to the decree of the court, leaving no assets in the hands of the administrator, nor any part of the trust undetermined. It was held, in such case, after final settlement and discharge, that the administrator was no longer subject to the jurisdiction of the probate court. But that is not the case at bar.

Neither does Dowd v. Morgan, 23 Miss. 587, authorize the theory of counsel based thereupon. In that case, letters of guardianship to one had been revoked and granted to another. The prior guardian was cited to settle his guardian accounts, which was done. A citation was then issued to the newly appointed guardian to appear and show cause why the account of the former guardian should not be allowed. Although he failed to appear, the court examined the account, and found a large balance due the minor. Upon its own motion, the court rendered judgment for this

balance against the former, in favor of the newly appointed guardian. It will be observed that this proceeding was not upon the petition or solicitation of either guardian, but by citation against both, and particularly that the proceeding was not instituted on the application of the acting guardian to determine the amount due to or by his ward, but that it was undertaken by the court to settle the account of the former guardian, when, also, upon its own motion, the court awarded the judgment already stated. On error, the court said: "If this judgment had been rendered upon a proper proceeding by the acting guardians, it would, perhaps, have been right and proper; but there is no law which will authorize a probate court to render a judgment in favor of a party who does not ask its assistance. Courts of justice can only grant relief or give judgment in favor of those who invoke their aid. In this case, it appears that no judgment was asked by the guardian, and, consequently, none should have been rendered in his favor." This language can be properly interpreted only by reference to the precise case determined.

In the case at bar, the decree was awarded upon the petition of the administrator for that very purpose, and is, therefore, unlike the case of Dowd v. Morgan. The decree in this instance was not only upon the petition of the party thereto, but in pursuance of articles 106, 107, Code of 1857, p. 451, which directly authorize it, and by which the practice in such cases is governed. Under this statute a petition by the distributees for a decree in their favor is unnecessary, the court being empowered by the statute quoted to make the decree on the application of the administrator for final settlement. A decree for distribution may, however, be obtained by distributees on their own petition under art. 118, Code of 1857, p. 454. The rule in Dowd v. Morgan, therefore, has no application. In the case at bar the appellees were parties litigant under art. 31, Code, 431, made so by the appellant on his own petition.

With reference to the argument that the remedy of the

appellees was at law, the foregoing affords a sufficient answer, and it requires only to be said, that where there is such ample remedy of a direct character, in a case like this as herein indicated, it would be unjust to drive a party to the circuity and delay of an action at law, though clearly open to him.

The decree is affirmed with leave· to the appellant to file his answer to the *scire facias* within forty days from this date.