The controversy before us on this appeal involves the question of the power of a board of county commissioners to make settlement of claims of the county for moneys on deposit in two banks that had been closed on account of insolvency.
The material facts are as follows: On December 17th, 1923, the First State Bank of Crosby failed and closed its doors. At that time the county of Divide had on deposit in such bank $15,574.82 of county funds. As security for the moneys so deposited the county held a depository bond executed by the bank and by C.J. Clark and L.S. Clark, as sureties. On October 27, 1923, the Security State Bank of Crosby failed and closed its doors on account of insolvency. At the time said bank closed its doors Divide county had on deposit therein $22,861.58 of county funds, as security for which it held a depository bond signed by the bank, and by R.L. Rousseau and J.C. Rousseau as sureties. The bonds of the two banks were the usual depository bonds, and contained the usual stipulations of such bonds. Within the time provided by the provisions of the bonds the county made proper demand upon the sureties for repayment to the county of the funds on deposit in each of the closed banks, but no part of such moneys was repaid. Thereupon the county commenced actions in the district court of Divide county against such banks and the sureties on their depository bonds and caused attachments to be levied against property belonging to the sureties. The sureties appeared in such actions and interposed answers setting up various defenses. Said actions have never been tried and are still pending. During the summer of 1924, while said actions were pending as aforesaid, negotiations were had looking toward the consolidation of the assets of the two closed banks and the reopening of such closed banks as one institution. The plan proposed and *Page 256 
eventually carried out was to have the Security State Bank assume and take over the assets and liabilities of the First State Bank and to have such Security State Bank reopened under the name of First Security State Bank of Crosby. As conditions precedent to the consolidation of the two closed banks and the opening of the First Security State Bank of Crosby, the guaranty fund commission and state banking department required that all doubtful or worthless paper in the two closed banks be withdrawn from the assets thereof and cash substituted therefor; also, that all depositors in the two closed banks enter into an agreement with the First Security State Bank of Crosby to the effect that their deposits in the two closed banks to be assumed by the new or reopened bank be not withdrawn until after the expiration of certain stated periods of time. The proposed plan was presented to the various depositors, including Divide county; and representatives of the guaranty fund commission met with the county commissioners of that county for the purpose of discussing and considering the proposed plan of adjustment between said banks and the depositors thereof.
The proposition so presented to the county commissioners called for a surrender by the county of the evidences of indebtedness held by it against the two closed banks and the issuance in lieu thereof by the First Security State Bank of Crosby of certificates of deposit, payable in installments as follows: 10 per cent in two years; 20 per cent in three years; 30 per cent in four years, and 40 per cent in five years. It was further provided that if upon the maturity of any of said certificates of deposit, sufficient liquidation had not been made of the assets of the reopened bank to enable it to make payment of such certificate or certificates of deposit as stipulated that then the First Security State Bank of Crosby should have the option of making pro rata payment of such amount as might be available for that purpose to depositors and claimants, and that upon such payment being made the time of payment of the remainder due upon such certificate or certificates of deposit should be extended for a period of not to exceed one year. The proposition thus presented to Divide county was precisely the same as that presented to each and all of the other depositors of the two closed banks. After due consideration the county commissioners of Divide county determined that, owing to the insolvency and insufficient resources of the two closed banks, and of the sureties upon the depository *Page 257 
bonds held by the county, it would be for the best interest of the county to accept the proposition thus presented. The county commissioners therefore agreed to accept the "deferred payment plan" certificates of deposit.
At the time of closing the said Security State Bank showed a net impairment of capital and surplus of approximately $22,057.49. And at the time of closing the said First State Bank showed a net impairment of capital and surplus of approximately $6,382.89.
The said two banks were permitted to reorganize as one bank under the name of the First Security State Bank, with a capital and surplus of $30,000.
As a condition precedent to the opening of the First Security State Bank the state banking department and the guaranty fund commission required that certain assets of the two closed banks, aggregating to exceed $62,000, be removed and cash or its equivalent substituted therefor. This requirement was met. The stockholders of the First State Bank of Crosby furnished $14,000 in cash and surrendered for cancellation certificates of deposit and released checking accounts held by them against the First State Bank aggregating $6,872. The stockholders of the Security State Bank furnished $13,804.50 in cash, and notes secured by first mortgages on real estate in the sum of $10,000, and surrendered for cancellation certificates of deposit and released checking accounts held by them against the Security State Bank, aggregating $24,262.99. The capital stock in the reorganized bank was sold at $25 above par, or at $125 per share, thus supplying the new bank not only with the full amount of the authorized new capital, but with a surplus fund and a fund credited to undivided profits as follows:
Capital stock ........................................ $25,000.00 Surplus .............................................. 5,000.00 Undivided profits .................................... 1,250.00 ----------- $31,250.00
The conditions imposed by the guaranty fund commission and the banking department having been met by the stockholders of the two closed banks the county commissioners of Divide county entered into the agreement in controversy Such agreement bears date September *Page 258 
18th, 1924, and embodies the terms and conditions hereinbefore mentioned. The agreement was signed by the new bank, by the board of county commissioners on behalf of the county, and by the sureties on the depository bonds of the two closed banks. There was attached to the agreement, and made a part thereof, a form of agreement signed by all depositors of the two closed banks, by the terms of which each and all of such depositors agreed to accept the obligation of the new bank in place of the obligations formerly existing against either of the two closed banks; and such depositors further agreed to accept payments of their claims on the "deferred payment plan" already mentioned. Upon the execution and delivery of such agreement the county surrendered to the First Security State Bank of Crosby its evidences of indebtedness against the two closed banks and received in lieu there? of certificates of deposit issued by the First Security State Bank on the deferred payment plan provided for in the agreement. Such certificates were dated September 23d 1924, and aggregated in all $41,267.26. At the time such agreement was made the county commissioners had on hand, and were guided by, an opinion of the attorney general of the state of North Dakota rendered by him to the board of county commissioners of another county in this state, in a similar situation. The opinion of the attorney general was to the effect that the county commissioners did have authority to enter into an agreement such as that proposed in this case where in their judgment it was to the best interest of the county to do so.
It is conceded that the county commissioners of Divide county acted in the best of faith in entering into the arrangement in controversy. And the sole question presented for determination is whether in the circumstances they were authorized to enter into the agreement which they did. It is contended on behalf of the relator: (1) that the county commissioners had no authority to enter into an agreement to deposit county funds for a period of longer than one year and no authority to deposit county funds in any one bank in an amount in excess of the combined capital and surplus of such bank; and, (2) that it was the duty of the county commissioners to press the actions pending against the sureties upon the depository bonds to final determination and enforce whatever judgments might be obtained against such sureties, and that the county commissioners had no authority to enter into an *Page 259 
arrangement in the nature of a compromise until all remedies against the sureties had been exhausted.
The contentions thus advanced cannot be sustained. The assumption that the county commissioners were dealing with county funds available for deposit is clearly unwarranted. The undisputed facts are that the county commissioners were not dealing with moneys at all; they were dealing with claims held by the county against two insolvent banks — banks which had closed their doors on account of insolvency.
The language and reasoning of the supreme court of Wisconsin in Washburn County v. Thompson, 99 Wis. 585, 75 N.W. 309, relating to a somewhat similar transaction seems quite applicable here. The Wisconsin court said:
"The county did not have $14,175.35, or any other sum of money, which its board undertook to loan to private parties, as counsel assume, so the observation that such board had no control over public money except to apply it according to law, though true, does not apply to the case before us. There was no such money to deal with. It had been lost through the deposit of it in an insolvent bank, and there was in its place a mere claim of doubtful value against such bank and an insolvent county treasurer and his insolvent bondsmen. How to recover the lost county funds was the problem that confronted the county board and what they dealt with in taking the bond. They did not resort to the bond as a means of lending money that had been lost."
The claims of the county, it is true, were secured by depository bonds; but the sureties on these bonds had failed to make payment, and actions had been instituted against them by the county commissioners in the name of the county and the sureties had appeared and interposed defenses. The nature of the defenses interposed does not appear in the record; but it does appear that the two closed banks were hopelessly insolvent; that as a result of the consolidation and reorganization plan carried out under the direction, and with the approval of, the state banking department and the guaranty fund commission, worthless or doubtful assets were removed and a new working capital supplied with the result that the financial condition of the new bank as compared with that of the two closed banks was improved to an extent of more than $100,000. The record, also, shows that the county commissioners were of the belief that the sureties on the depository bonds were not financially responsible, *Page 260 
and that whatever judgments might eventually be obtained against them in the pending actions could not be collected in full. In other words, it appears from the record that the county commissioners, acting for Divide county, in common with all the other depositors of the two closed banks, and the state banking department and guaranty fund commission, were of the opinion that the proposed adjustment was for the best interest of all of the depositors of the two closed banks including Divide county; and that the county commissioners of Divide county were further of the opinion that the adjustment of its claims against the two insolvent banks and the sureties on the depository bonds as made by the agreement involved in this suit, was more advantageous to the county than it would be for the county to attempt to realize upon its claims against the two closed banks, and proceed with its pending actions against the sureties on the depository bonds. The county commissioners did not release its actions or rights of action against the sureties upon the depository bonds. These actions were merely continued, and the county may press them in case the certificates of deposit issued to the county by the First Security State Bank of Crosby are not paid according to the terms of the agreement. The record in this case, therefore, shows that the county commissioners of Divide county in the best of faith, and actuated solely by a desire to promote the best interests of the county, entered into the agreement in controversy, and that by virtue of such agreement they obtained for the county's claims against the two insolvent banks the obligation of a bank chartered by the state banking authorities as a solvent banking institution, fully able to discharge all obligations assumed by it. We believe that in these circumstances the county commissioners had the power to enter into the arrangement which they did. County commissioners are vested with the general management of the fiscal affairs of the county. N.D. Const. § 172; Comp. Laws 1913, § 3276; State ex rel. Wiles v. Albright, 11 N.D. 22, 27, 88 N.W. 729; Hagler v. Kelly, 14 N.D. 218, 103 N.W. 629. They have power to institute and prosecute civil actions for and on behalf of and in the name of the county and to make orders respecting county property. Comp. Laws 1913, § 3273; State ex rel. Wiles v. Albright, 11 N.D. 22, 27, 88 N.W. 729. In absence of express or implied inhibition, the power to sue carries with it by necessary implication authority to make reasonable and honest compromises of suits authorized *Page 261 
to be brought. 5 McQuillin, Mun. Corp. § 2379; State v. Davis, 11 S.D. 111, 114, 74 Am. St. Rep. 780, 75 N.W. 897; Washburn County v. Thompson, 99 Wis. 585, 75 N.W. 311; Hagler v. Kelly, 14 N.D. 218, 103 N.W. 629. The statutes of this state relating to the powers of the county commissioners contain no express or implied inhibition upon the power to compromise and the existence of such power has been specifically recognized in the decisions of this court. See Hagler v. Kelly, supra. Of course, it goes without saying, the board of county commissioners may not under guise of a compromise surrender valuable rights or interests in claims against solvent and responsible individuals where there is no substantial controversy as to their liability; but there is no contention that that was the situation here. In the institution and prosecution of actions to enforce claims in favor of the county, the county acts through its board of county commissioners, and it would, indeed, be a somewhat strange policy if those authorized to institute an action must necessarily go through with it to the bitter end, even though a compromise were offered which would be much more advantageous to the county. State v. Davis, 11 S.D. 111, 114, 74 Am. St. Rep. 780, 75 N.W. 897. Certainly it should not be assumed that the legislature intended to establish any such policy as regards the management of the fiscal affairs of the county, unless that policy has been clearly expressed. The record in this case affirmatively shows that the county commissioners were acting in good faith and that they made what, in their judgment, was a desirable compromise of what they believed to be claims of doubtful value. And upon the record before us it does not appear that this assumption on the part of the county commissioners was erroneous.
The judgment appealed from is reversed and the proceeding ordered dismissed.
NUESSLE, BIRDZELL, BURKE, and JOHNSON, JJ., concur. *Page 262