STATE OF NEBRASKA, EX REL. FIRST NATIONAL BANK
OF YORK, v. GEORGE S. COOK, TREASURER.

FILED JANUARY 3, 1895.    No. 5483.

1. **Municipal Corporations:** WARRANTS.    The warrants of a
   municipal corporation are not negotiable instruments.    They do
   not constitute a new debt or evidence of a new debt, but are
   only the prescribed means devised by law for drawing money
   from the treasury.

2. ——: ——: THE ACT OF A TREASURER IN PAYING money
   is ministerial and he may only make payments upon orders of
   the officers in whom the law reposes the authority to direct such
   payment.

3. ——: ——. A WRIT OF MANDAMUS will not be issued to
   compel a treasurer to pay a warrant unless the right of the re-
   lator to receive payment thereof is clear.

4. ——: ——: RIGHTFUL REFUSAL OF PAYMENT.   A city granted
   a franchise for the construction of water-works, contracted to pay
   certain hydrant rentals and that in case the owners of the works

State v. Cook.

should issue mortgage bonds the city would pay a sufficient amount of the hydrant rentals to the trustee under the mortgage to discharge the interest on the bonds.   A claim for hydrant rentals was audited and allowed by the council and a warrant was issued on representations by an agent of the water-works company that its bonds had not been sold.   This representation proved false.   An action was begun to foreclose the mortgage securing the bonds and the city was cited in that action to show cause why it had not paid the hydrant rentals to the trustee. The council, by resolution, directed the treasurer not to pay the warrant until a settlement should be effected.   *Held*, That under such circumstances an application for a *mandamus* to compel payment of the warrant must be denied.

ORIGINAL application for *mandamus*.

*George B. France*, for relator, cited, to the contention *inter alia* that a warrant *prima facie* valid should be paid: *Ray v. Wilson*, 10 So. Rep. [Fla.], 613.

*G. W. Bemis, E. A. Gilbert*, and *N. V. Harlan, contra:*

The warrant is invalid because no annual appropriation bill was passed by the council within the first quarter of the fiscal year. (*Town of Olin v. Myers*, 7 N. W. Rep. [Ia.], 509; 1 Dillon, Municipal Corporations, sec. 291; *State v. Gray*, 23 Neb., 365; Consolidated Statutes, secs. 2899, 2902, 2909, 2911; *City of Blair v. Lantry*, 21 Neb., 258.)

Courts will not grant a *mandamus* to a person to do any act when it is doubtful whether he ought to do it. (High, Extraordinary Legal Remedies, sec. 9, p. 13; *People v. Davis*, 93 Ill., 133; *Commissioners of Highways v. People*, 99 Ill., 587; *Oakes v. Hill*, 8 Pick. [Mass.], 46; *People v. Klokke*, 92 Ill., 134.)

No legal estimate or appropriation bill had been passed prior to the passage of the ordinance. (*City of Blair v. Lantry*, 21 Neb., 258; *McElhinney v. City of Superior*, 32 Neb., 744; *Grand Island Gas Co. v. West*, 28 Neb., 852.)

IRVINE, C.

This is an original application for a writ of *mandamus* to compel the respondent, treasurer of the city of York, to pay a warrant alleged to have been issued by the authorities of that city in favor of the relator for $1,789. It is alleged that this warrant was drawn on the water fund, and that the respondent has in his possession over $3,000 in said water fund applicable to the payment of the warrant. The warrant is dated August 15, 1889, and indorsed as having been presented on the same day, and not paid for want of funds. The answer admits that the treasurer now holds in his possession more than enough to pay the warrant, belonging to what is denominated the water fund, and derived from taxes collected under the levy of 1889; admits that the warrant was drawn as alleged; that it was presented and payment refused. As grounds for refusing to pay the warrant the respondent alleges: First, that the warrant does not in form comply with the requirements of the law; second, that there was no valid appropriation against which the warrant could be drawn; third, that no authority was ever granted to issue the warrant to the relator; fourth, that the city of York had entered into a contract with one Strang and another, granting to them a franchise for a system of water-works, contracting with them to lease a certain number of hydrants at a certain rental, and agreeing that in case Strang and McConnell should issue mortgage bonds upon said water works, a sufficient sum from the hydrant rentals to discharge the interest upon such bonds should be paid to the trustees under the mortgage as the rentals became payable; that this franchise passed to a corporation known as the York Water-works Company, which made its mortgage securing bonds amounting to $60,000, and that the agreement of the city referred to was, by its clerk, certified upon such bonds; that the water-works company, about July 1, 1889, filed its claim

against the city for hydrant rentals for the past six months; that its claim was allowed in the sum of $1,789, and that the warrant in question was drawn for that claim; that Strang, one of the original grantees of the franchise, a stockholder in and the agent of the water-works company, in order to procure the allowance of the claim referred to, represented that all the interest coupons on said bonds, up to July 1, 1889, had been paid and canceled, and, relying upon that representation, the claim was allowed; whereas, in fact, said coupons had not been paid, but are still outstanding, and the holders thereof demand payment from the city; that on May 22, 1890, the city council passed a resolution, set out in the answer, that no further payments be authorized on account of hydrant rentals until a settlement should be had between the water-works company and its bond-holders, and all coupons surrendered to the city, and directed the treasurer not to pay the warrant in question until such settlement should be had; that the trustee of the mortgage had brought suit in the circuit court of the United States to foreclose the same on account of default in the payment of said interest coupons; fifth, that for certain reasons set out in the answer the contract, with reference to hydrant rentals, was without legal authority and void; sixth, that no estimate had been made or published, as required by statute, of the expenses of the city government.

We have very briefly stated the nature of some of these defenses for the reason that it will not be necessary to consider them all. The referee appointed for the purpose has reported his findings of fact, the sufficiency of the evidence to sustain which is not questioned. From these findings it appears that the claim was presented, allowed, and the warrant issued for the purpose stated in the answer; that the plaintiff purchased the claim after its allowance, and before the warrant was drawn, without actual notice of the issuance of the bonds; that the bonds and mortgage were

made and issued as alleged in the answer, and that the con-
tract of the city was as therein set out; that when the war-
rant was issued Strang represented to the council that the
bonds had not been sold; that an action is pending in the
federal court as charged in the answer, and that the city
has been cited to appear in said case and show cause why
it has not paid the past due coupons to the trustee, and that
the rescinding resolution set out in the answer was passed
as alleged. The report of the referee finds on all the other
issues, but the facts already stated are sufficient to control
the case. It has been held that *mandamus* will lie to com-
pel the payment by a treasurer of warrants legally issued
upon accounts duly audited and allowed, when such war-
rants have been presented and payment refused, and there
are sufficient funds in the treasury to pay said warrants
after the payment of all warrants drawn against that fund
prior to the same. (*State v. Gandy*, 12 Neb., 232.) It will
be observed that this rule is restricted to the case of war-
rants legally issued. It is well settled that such instru-
ments are not negotiable instruments, and that a purchaser
thereof does not take the same discharged of any equities
existing against the original holder. (*School District v.
Stough*, 4 Neb., 357; *Union P. R. Co. v. Buffalo County*,
9 Neb., 449; *Burlington & M. R. Co. v. Clay County*, 13
Neb., 367.) The reason given in some of the best consid-
ered cases for holding such instruments non-negotiable is
that a municipal corporation has no power in the absence
of an express grant to issue unimpeachable evidences of
indebtedness. Thus, in *Police Jury v. Britton*, 15 Wall.
[U. S.], 566, Mr. Justice Bradley says: "It is one thing
for county or parish trustees to have the power to incur ob-
ligations for work actually done in behalf of the county or
parish, and to give proper vouchers therefor, and a totally
different thing to have the power of issuing unimpeachable
paper obligations which may be multiplied to an indefinite
extent." And in *Mayor of Nashville v. Ray*, 19 Wall.

State v. Cook.

[U. S.], 468, the following is said in regard to the nature of such warrants: "Vouchers for money due, certificates of indebtedness for services rendered, or for property furnished for the uses of the city, orders or drafts drawn by one city officer upon another, or any other device of the kind, used for liquidating the amounts legitimately due to public creditors, are of course necessary instruments for carrying on the machinery of municipal administration,. and for anticipating the collection of taxes. But to invest such documents with the character and incidents of commercial paper, so as to render them in the hands of *bona fide* holders absolute obligations to pay, however irregularly or fraudulently issued, is an abuse of their true character and purpose. It has the effect of converting a municipal organization into a trading company, and puts it in the power of corrupt officials to involve a political community in irretrievable bankruptcy. No such power ought to exist, and in our opinion no such power does legally exist, unless conferred by legislative enactment, either express or clearly implied." It is also said in that case that the officers of a city have no authority to issue warrants for an illegal purpose, and that their acts cannot create an estoppel against the city.

In the absence of a statute conferring special characteristics upon warrants the authorities are practically unanimous that such instruments are merely devices for properly drawing money from the treasury; they are little more than certificates of indebtedness. "The warrant is not intended to constitute a new debt or evidence of a new debt, * * * but is the prescribed means the law has devised for drawing money from the county treasury." (*Dana v. City of San Francisco*, 19 Cal., 486.) An indorsee may sue upon such warrant, not because he has title under the law merchant, but because the indorsement amounts to an assignment of the debt upon which the warrant is issued. The auditing of claims and issuing war-

rants therefor are not such settlements as to have the force of a judicial proceeding or to estop the corporation issuing the warrant. (*Shirk v. Pulaski County*, 4 Dill. [U. S.], 209; citing numerous cases.) This must be true when the body allowing the claim has, not been given authority to act judicially in determining the legality of the claim. While money remains in the possession of the treasurer, the authorities having the power of disposing of the same have entire control of it, and the rescission of an order directing its payment before the payment is in fact made, is as between the holder and the treasurer a defense to the latter. (*Tucker v. Justices of Iredell County*, 13 Ired. Law [N. Car.], 434; *Dey v. Lee*, 4 Jones Law [N. Car.], 238.)

The case of *People v. Klokke*, 92 Ill., 134, is very instructive with reference to the question before us. That case was an application to compel the county clerk to issue a warrant and to compel the treasurer to countersign and pay the same. There had been a disputed account between the county and the relator. In the course of the controversy a proposition was made to compromise by the payment of a certain sum, and a resolution had been passed authorizing the payment of another sum. Before the proposition to compromise had been accepted, the commissioners rescinded this resolution, and the court held that under the circumstances the clerk and treasurer would not be compelled by *mandamus* to issue or pay the warrant. It was further held that whether the board could rightfully rescind the order could not be determined in that action, but that the clerk and treasurer were merely ministerial officers, and whether or not the board could rightfully rescind the order, the resolution rescinding it deprived these officers of their only authority in the premises.

In *People v. Johnson*, 100 Ill., 537, a county warrant had been issued to one Comiskey. Comiskey indorsed it in blank and lost it. It subsequently came into the hands of the relator who purchased it for value without notice of

the defective title.   In the meantime Comiskey had pro-
cured a duplicate warrant which was paid.   The court said
that the drawing of the order did not operate as a payment
or change the character of the indebtedness; that such
orders are given simply as a part of the system provided
for paying county indebtedness; that the loss of the order
could not have affected Comiskey's rights, that while, as a
general rule, *mandamus* will lie to compel the payment of
orders legally drawn, still where by reason of extraneous cir-
cumstances a well founded doubt arises either as to the
right of the applicant to receive the fund or the duty of the
officer to pay it, *mandamus* is not the proper remedy.   The
claimants must resort to some other appropriate action.

   Applying these principles to the case before us, we think
it plain that the writ must be denied.   The issuing of the
warrant did not change the nature of the indebtedness.   The
bank took it subject to all defenses which might have been
urged had it been issued to the water-works company.   Be-
fore its payment the council learned that it had been in-
duced to allow the claim by reason of false representations,
made on behalf of the water-works company.   It then di-
rected its ministerial officer not to pay the warrant.   An-
other action is pending whereby other persons seek to en-
force payment to them of the same claim.   It is not for
the treasurer to review the action of the council and deter-
mine for himself whether or not a claim is justly payable
to a particular person.   He acts only under the authority
given by the council acting in accordance with law, when
he makes the payment.   Without such authority a payment
by him would be wrongful and subject him to personal lia-
bility.   We cannot, in an application for a *mandamus*
against him, undertake to try the disputed claims of the
relator and the bond-holders.   The bond-holders are not
parties to this suit, and the city is not a party.   The relator
has not shown a clear legal right.

                                            WRIT DENIED.

   POST, J., not sitting.