BARTOL NELSON, Plaintiff, v. HARRISON COUNTY ET AL., Defendants and Appellees, E. F. OGDEN, Defendant and Appellant, W. A. SMITH, ET AL., Interveners and Appellants.

**Counties:** POWER OF SUPERVISORS. Under the statutes, the management and control of county property is entrusted to the board of supervisors, and unless its acts are in bad faith and amount to a fraud upon the county the courts will not interfere.

**Contract with county:** VALIDITY: PARTIES. The invalidity of a contract made by a county and the issuance of a warrant thereunder, cannot be determined in a suit between the county and its treasurer to restrain the payment of the warrant, to which the person with whom the contract was made and warrant issued was not a party.

**Contracts with county:** VALIDITY: EVIDENCE. Any contract entered
into by a board of supervisors to furnish the county supplies, materials, or labor, which is with or for the benefit of any member of the board, is void to the extent of such member's interest therein. Evidence held to show the contract in suit void as to the interest of a supervisor therein.

**Swamp lands:** USE OF PROCEEDS: STATUTES. A county may use the
proceeds arising from the sale of swamp lands granted to it by the swamp land act of 1850 in the construction of roads through the swamp land district, without submitting the question to a vote of the people, notwithstanding the subsequent act of 1858 which is held to require such submission in case roads are to be constructed outside the swamp land district.

**Contract with county:** FRAUD. A contract for improvement of a
highway made through an arrangement with and for the benefit of a member of the board of supervisors, is fraudulent and void.

**Same.** A contract prohibited by statute is void, and where county
warrants in whole or in part are issued to members of a board of supervisors on either an express or implied contract to furnish the county materials or labor, the same should be cancelled or reduced by the court to the lawful amount, though in the hands of a third party.

**Same.** Warrants issued in payment of material greatly in excess of
the county's need, and at exorbitant prices, and under circumstances indicating collusion and fraud, should be cancelled by the court or reduced to the proper amount, though held by a third party.

*Appeal from Harrison District Court.*— HON. A. B THOR-
NELL, Judge.

WEDNESDAY, JANUARY 18, 1905.

ACTION in equity originally brought by plaintiff in May, 1902, for an injunction to restrain the issuance of bonds by the defendant county to take up outstanding road and bridge fund warrants of said county, and which warrants are alleged to have been fraudulently and unlawfully issued. The defendants named are Harrison county and B. F. Huff, county auditor; E. F. Ogden, county treasurer; and Arthur Gilmore, W. S. Kelly, and John H. Hall, members of the board of

supervisors of said county. Before trial the plaintiff dismissed his petition, and the case was tried upon issues made up between defendants and W. A. Smith and W. J. Burke, separate interveners. In the main the decree was favorable to the county as against both interveners and the defendant Ogden, and interveners and said defendant appeal. Modified and *affirmed.*

*J. S. Dewell* and *Cochran & Egan,* for appellants.

*L. W. Fallon, Bolter Bros.,* and *Roadifer & Arthur,* for appellees.

BISHOP, J.— The board of supervisors of the defendant county during the years 1899, 1900 and 1901, was composed of J. O. Pugsley, C. H. Hilliard, and G. E. Reiff. During

1. COUNTIES:
power of
supervisors.

said years a large number of bridge fund warrants of said county had been issued upon the order of the board to the Standard Bridge company in payment of bridge material delivered to the county. Of such warrants there was outstanding on the 25th day of April, 1902, the sum of $23,368.82. When the present members of the board came into office, they found a large amount of such material on hand, and for much of which, in their judgment, the county then had no use, nor would it have for some years to come. It is quite apparent that some question had been raised as to the validity of the warrants held by the bridge company, and it appears that on the date named the parties came together, and a contract in writing was entered into, whereby the company agreed to take a considerable portion of the bridge material, and pay the county therefor a stipulated price, in consideration of which the board agreed for the county that payment of the warrants held by the company would not be contested. The interveners, Smith and Burke, as taxpayers, attack such contract as in fraud of the rights and interests of the county. They

do not question the validity of the warrants held by the company, but the contention is that the prices at which the bridge material was agreed to be sold were so far inadequate as to amount to a fraud upon the county. Should we concede that the prices agreed upon were lower than the material would have brought at the hands of a buyer seeking to purchase, still it must be said, as we think, that the amounts named were not unreasonable under all the circumstances, and it seems certain that the board acted with reference thereto in good faith. This being true, there is no warrant for interference on the part of the courts. The care and management of the property and business of the county is intrusted to the board, and not to the courts. It may sell personal property not needed, in its judgment, by the county, and it may compromise claims made by or against the county. Code, section 422; *Sac County v. Hobbs,* 72 Iowa, 69. That the courts may inquire into a gross abuse of the power thus granted is undoubtedly true, but the record before us demands no such exercise of jurisdiction. Our conclusion is in harmony with that reached by the district court.

II.  On December 30, 1901, a contract was entered into between the defendant county, acting through its board of supervisors then in office, and one W. T. Roden, for the

2. CONTRACT WITH COUNTY: validity; parties.

purchase by the county from said Roden of 80 acres of land in said county at the agreed price of $5,000. The expressed object of the purchase was to establish a county poor farm. At the time of the contract, by order of the board, a county warrant for the sum of $1,500 was drawn, and delivered to Roden as part payment of the purchase price of said land; and it was agreed that the remaining $3,500 should be paid March 1, 1902, when a deed of the land, accompanied by an abstract of title, was to be delivered to the county. The defendant county, in its answer herein filed, attacks the said contract on the grounds of fraud and for a want of power on the part of the board to enter into the same. In a cross-petition against

its co-defendant Ogden, treasurer, the county alleges that prior to the commencement of this action a resolution was adopted by its present board of supervisors declaring the invalidity of said contract, and directing said Ogden, as county treasurer, not to pay the said warrant so issued for the sum of $1,500, and that a copy of said resolution was duly served upon him, said Ogden. It is then alleged that, notwithstanding such direction and order, and since the commencement of this action, said Ogden has paid said warrant in full. The prayer is that said warrant be adjudged to have been illegally issued, and that the same in the hands of the said Ogden be canceled, and held for naught. The relief thus prayed was granted by the decree of the district court. In this, we think, there was error. The contract was made with Roden, and the warrant was issued to him. He was not made a party to this action, and it was not competent for the court to determine upon the validity of the contract or warrant in his absence. Ogden was not legally restrained from making payment of the warrant when presented for that purpose. The direction of the board could not have any such effect. That he paid the warrant at his peril, in view of the controversy then pending concerning the validity of the same, and the resolution of the board asserting the invalidity thereof, may be true, but it will be time enough to decide that point when if ever the legality of the transaction shall have been judicially determined as between all the parties in interest.

III. Late in the year 1901, there was established in said Harrison county, by order of the board of supervisors, what is known in the record as the "House Consent Road."

8. CONTRACTS WITH COUNTY: validity; evidence. Soon thereafter W. A. Smith, intervener and appellant in this case, presented to the board a statement in writing to the effect that a grade or levee was necessary to be constructed on a portion of the line to make the road passable, and proposing to construct the same using dirt to be taken from either end of or along

the grade or from such other place as he might elect, and all to be done for twenty-five cents per yard, measured in the bank.    On motion of Supervisor Hilliard, the proposition was accepted, the contract price to be paid from the county swamp-land fund so far as there might be any, and the remainder from the county road fund.    It is a fact in the case that thereafter a portion of the work was done, and it also appears that a warrant on the swamp-land fund of the county in the sum of $565.92 was issued to Smith, by order of the board, to apply in payment for such work.    The present board of supervisors of said county having adopted a resolution declaring said contract void and rescinding the same, and directing the treasurer of said county to pay no warrants issued on account of said contract, and notice of all thereof having been given to said Smith, accompanied by a demand for a return of said swamp-land fund warrant, said Smith, as intervener in this case, prays a decree declaring the said contract and the said warrant issued to him to be in all respects valid and binding.

The county, by its answer, contends for fraud and illegality in the contract; alleges that in truth the same was made and entered into for the benefit of Supervisor Hilliard, and that the larger part of the work was done by him, including that for which said warrant was issued; further, as to said warrant, it is said there was no authority in the board to direct the issue thereof except upon vote of the people of the county, which was not had.    Now, the evidence shows that the road as laid out leads into a sparsely settled district along the Missouri river, and does not connect at its western terminus with any highway then traveled to any considerable extent.    It is also made to appear that the proposed work as laid out by an engineer would cost at the contract price about $6,000, and there was evidence tending to show that such price was grossly exorbitant; also that of the work done from two-thirds to three-fourths was done by Supervisor Hilliard.    The district court found that

the contract was entered into with the understanding that
the work should be done in the larger part by Hilliard's men
and teams, and that to the extent of the work so done by
Hilliard the claim of the intervener Smith should be held
to be without right, and canceled; that, as the evidence does
not disclose just how much work was done by Hilliard, ".the
court, without passing upon the amount Smith is entitled
to, leaves it to be determined between said contractor and the
board of supervisors." In our view, the court could not have
done less. The statute forbids members of the board of
supervisors from becoming parties, directly or indirectly, to
any contract to furnish supplies, materials, or labor to the
county. Section 1, chapter 13, Acts Twenty-seventh General
Assembly. To our minds the conclusion is irresistible that
the contract was crowded through during the closing hours
of the official existence of the members of the old board by
Hilliard — Pugsley alone voting with him — and for his
own benefit. We need not set forth the evidence. It is
sufficient that we are satisfied that the finding made by the
district court was dictated by the facts, and that the decree
entered should not be disturbed.

As to the swamp-land fund warrant, the court found
the same to have been issued without authority of law, and
ordered the same canceled. We think that in this there was

4. SWAMP LAND:
use of pro-
ceeds;
statutes.

error. Under the act of 1853 (Laws 1852–53,
page 29, chapter 13) all swamp lands granted
to the State by the act of Congress approved
September 28, 1850 (9 Stat. 519, chapter 84), were in truth
granted to the respective counties in which situated for the
purpose of constructing the necessary levees and drains re-
quired by the act of Congress; the balance, if any, to be
applied to the building of roads and bridges, when necessary,
through or across said lands, and, if not needed for this pur-
pose, to be expended in building roads and bridges within the
county. By a subsequent act passed in 1858 (Laws 1858,
page 256, chapter 132), entitled " An act to authorize coun-

ties to use the swamp lands to aid in the construction of rail-
roads and seminary buildings," it was made lawful to devote
such lands or the proceeds thereof to the erection of public
educational buildings, the building of bridges and roads, or
for making railroads through the county; provided that the
question of such use be first submitted to a vote of the people
of the county.    If such provision as related to bridges and
roads should be given force in view of the title to the act,
it is clear to our minds that it had reference only to bridges
and roads in the portions of the county apart from the swamp-
land districts.    No attempt was made to repeal the provisions
of the act of 1853, and we are not warranted in holding that
there was an implied repeal.  The lands upon and over which
the road in question was laid out were within the grants
referred to, and we think it was within the power of the
board to appropriate the proceeds of swamp-land sales to
the building of such road without first submitting the ques-
tion to a vote of the people.

IV.    In January, 1901, the board of supervisors of the
defendant county entered into a contract with one G. W.
Weatherly to fill a ditch and build an embankment in and
across what is known as the " Cox Ditch " in a
public highway in said county.    The work was
to be done by taking earth from the highway, or,
if not sufficient, from the adjacent land, and the contract
price was 10 cents per yard for taking up the earth and 10
cents per yard for dumping it into the ditch.    The court
below found the contract to be strongly impregnated with
fraud, and such finding is in accord with our conclusions.
Weatherly, and no one else, was notified by Hilliard that a
contract was about to be let.    He came before the board with
a contract ready for signature, and it was signed.    The price
therein agreed to be paid was exorbitant.    Weatherly then
took Hilliard into partnership with him, and the latter not
only did most of the work, but he approved of the bills for
doing the same.    The transaction cannot be characterized

5. Contract with
county:
fraud.

otherwise than as a bold and conscienceless scheme on the part of Hilliard to plunder the county treasury, using Weatherly as a thin cover for his depredation.   The court, however, in view of the fact that the work done was of benefit to the county, and in character such as might be charged to the bridge fund, concluded to allow the reasonable value of the work done and the value of extras claimed.   Accordingly the price per yard was scaled to five-eighths of the contract price, and the warrants issued and unpaid, including several held by the intervener Burke, were ordered reduced accordingly.   The county does not appeal, and the decree should not be disturbed.

V.   During the years in question a large number of warrants on the bridge fund of the defendant county were drawn in favor of J. O. Pugsley and C. H. Hilliard, then members of the board of supervisors of said county, and these were so drawn upon bills presented from time to time by said Pugsley and Hilliard, respectively, and approved by the board.   Each of the warrants so drawn and now outstanding are owned by the intervener Burke.   It is conceded that many of the bills so presented, and for which warrants were so drawn, included charges for labor done and materials furnished by said supervisors respectively upon bridge work in said county.   The defendant county insists that to the extent that such warrants represent charges in favor of Pugsley and Hilliard, and hence objectionable under the provisions of the act of the Twenty-Seventh General Assembly, *supra,* the same should be canceled.   The contention of intervener Burke is that the record does not show that any such work done or materials furnished was under a contract directly or indirectly made with the county, and hence the statute invoked has no application; moreover, that in view of the character of the work done and materials furnished and the circumstances thereof, the transactions cannot be said to be offensive to the public policy of the State.

6. SAME.

The court by its decree ordered a large number of such warrants to be canceled or reduced, specifying the numbers and the amounts thereof.  We think there was no error. True, express contracts under which materials were furnished or labor done are not shown by the record.  What was done by Pugsley and Hilliard was on their own motion, and the county was liable therefor, if at all, as under implied contracts.  Now, the provision of the statute is that "members of the board  *  *  *  shall not buy from, sell to, or in any manner become parties, directly or indirectly, to any contract to furnish supplies, material, or labor to the county," etc.  Surely the language here used is not subject to misunderstanding. , A supervisor may not sell material or labor to the county; he may not in any manner become a party to any contract (and this includes implied as well as express contracts) to furnish labor or material to the county.  We may agree with counsel for appellants that the enforcement of this law may at times work inconvenience, but with that we have nothing to do.  Now, that what was done by Pugsley and Hilliard, as complained of, came within the prohibition of the statute, is too clear for argument; and as, in effect, they are before the court in the person of Burke, asking that they be paid, it became the duty of the court to refuse payment, and this was done by ordering the warrants reduced or canceled.  A contract prohibited by statute is void.  *Pike v. King,* 16 Iowa, 49; *Miller v. Ammon,* 145 U. S. 421 (12 Sup. Ct. 884, 36 L. Ed. 759).  The case is to be distinguished from *Kagy v. School District,* 117 Iowa, 694, at least in that there the action was to recover back moneys paid by the district on accounts fully settled and closed.

VI.  The evidence makes it appear that late in the year 1901 lumber and piling in large quantities was purchased of Spooner & Son on behalf of the defendant county.

7. SAME.

Such purchases were made by Supervisor Pugsley, who was to retire from office in January following.  The lumber and piling were for bridge purposes,

and was greatly in excess of any possible need of the county. This is shown by the fact that when Pugsley retired from office there was on hand in the district from which he was elected about 126,000 feet of lumber and 10,400 feet of piling; while in the county as a whole there was on hand 310,000 feet of lumber and 17,800 linear feet of piling. And the county bridge fund was overdrawn in an amount exceeding $60,000. Spooner & Son ordered the lumber and piling in car lots, and upon receipt it was thus delivered to the county, and a bill, without being itemized, was made out and given to Pugsley. The latter presented such bills to the board, and on his recommendation they were allowed, and warrants ordered. The profits to Spooner & Son on piling were over seventy-nine per cent., and on lumber over thirty per cent. We need not set forth the evidence further in detail. The court found there was fraud and collusion, and we agree in the conclusion reached. By the decree the court found that, as the material was in the possession of the county, and could not be returned in entirety, equity would be satisfied by a reduction of the amount of the warrants issued, all of which are now in the hands of the intervener Burke as owner, to the amount of the cost price of the material, with a reasonable profit added, and it was so ordered. The county does not appeal, and we decline to interfere with the decree.

VII. The prayer on the part of interveners that the defendant county be restrained from issuing bonds to fund the legitimate indebtedness of the county was denied by the decree, and of this we approve.

Other matters presented by the record, and reference to which is made in the decree, do not demand specific notice. The decree will be modified in the respects indicated in this opinion, and in all other respects it is affirmed.

Modified and *affirmed*.