HARRISON COUNTY, IOWA, Plaintiff, Appellee, v. EDWARD F. OGDEN, FIDELITY & DEPOSIT COMPANY OF MARYLAND, W. A. SMITH, JOHN YOUNG, J. S. DEWELL, W. J. BURKE, C. A. BOLTER, ALMOR STERN, W. H. JOHNSON, CHARLES F. LUCE, J. O. PUGSLEY, A. COULTHARD, H. R. COULTHARD, CHARLES HOUSE, A. SPOONER, GEORGE A. KELLOGG, O. WALKER, FRED S. BROWN, J. C. MILLIMAN, L. KELLOGG, T. F. JORDAN, E. H. BARRETT, H. B. KLING, JOSIAH COE, F. J. PORTER, WILLIAM H. MCEUEN, S. J. PATTERSON, B. F. FREEMAN, H. L. PRESTON, and ANNA E. PRESTON, Executors of the Estate of W. T. PRESTON, Deceased; JOHN CLINKENBEARD, JAMES WILKINSON, H. D. LEWIS, W. S. KELLEY, M. B. PITT, County Treasurer; W. T. RODEN, State Savings Bank of Missouri Valley, Iowa, Defendants.

Municipal corporations:  COUNTIES:  ACTION ON TREASURER'S BOND:
1  PARTIES. Where a county brought suit against its treasurer and his bondsmen for an alleged balance due on the treasurer's final settlement, growing out of the payment of a warrant issued on a land contract which the county had rescinded, the bank to which he paid the amount of the warrant and the sureties on an indemnity bond given the treasurer to save him harmless because of such payment, were proper and necessary parties to the action for the purpose of determining whether the treasurer was entitled to credit for the amount of the warrant.

**Same:** EQUITABLE JURISDICTION: PARTIES. While a suit at law might have been brought directly against the treasurer and his bondsmen, or against the bank on the ground of conversion, equity would take jurisdiction that the rights and liabilities of all the parties connected with the transaction might be disposed of in one action and a multiplicity of suits thus avoided. As the suit was properly brought on the treasurer's last bond, and they were the only bondsmen who appealed, any error in joining former bondsmen as parties to the action was not prejudicial.

**Same.** When equity has obtained jurisdiction of the subject matter it will determine all matters material to the controversy for the accomplishment of complete justice between all parties.

**Same:** CONVERSION OF COUNTY FUNDS: LIABILITY. A county treasurer holds the public funds in trust, for which it is his duty to account; and by appropriating any part of the same to its own use a bank, in which the same were deposited, and the sureties on its bond are liable to the county as for conversion of the trust fund.

**Same:** PURCHASE OF LAND FOR POORHOUSE: CONTRACTS: ULTRA VIRES. A county has no statutory authority to purchase land for the construction of a poorhouse and to pay therefor more than two thousand dollars, the buildings thereon not being suitable for poorhouse purposes, without a vote of the people; and a contract for the purchase of ground at a cost of five thousand dollars with no provision for buildings and without a vote of the people, is *ultra vires* and void.

**Same:** CONTRACTS: WARRANTS. The issuance of a county warrant neither creates nor is evidence of any new debt, but is merely a means of drawing funds from the county treasury; and when issued pursuant to an invalid contract will not estop the county from claiming that the contract was invalid.

**Same:** RESCISSION OF CONTRACT: PAYMENT OF WARRANTS. The supervisors are the financial agents of the county and the treasurer is a ministerial officer, whose duty is to receive and disburse the public funds on warrants issued by the auditor, at the direction of the supervisors. So that where a warrant was issued pursuant to an invalid contract which the supervisors rescinded, the duty of paying the warrant ceased when the treasurer was advised of the action of the supervisors.

**Same:** LIMITATION OF ACTIONS. Where a treasurer accounted in cash for the amount of a warrant at each settlement with the county following a rescission of the warrant and wrongful payment by him, no

cause of action therefor accrued against him until he refused to account therefor on his final settlement with the board.

**Same:** WRONGFUL PAYMENT OF WARRANT: RECOVERY.  Where a warrant was paid by the treasurer after it had been rescinded by the supervisors, the amount thereof could be recovered from the parties thus wrongfully receiving the money with knowledge of its illegality.

**Same:** PRIOR ADJUDICATION.  A judgment in a prior action to recover the amount wrongfully paid upon a warrant, in which the court determined that it was without jurisdiction because the party to whom the same was issued and the one to whom it was paid were not before the court, was not an adjudication of the right to sue the treasurer therefor, his bondsmen, the bank to whom it was paid or the sureties upon a bond given by the bank to indemnify the treasurer against loss in case of payment.

**Appeal of equitable actions:** TRIAL DE NOVO: EVIDENCE: ASSIGNMENT OF ERROR.  The erroneous admission of evidence in an equitable action, which is triable de novo on appeal upon such evidence only as was properly admitted, is not an assignable error.

*Appeal from Harrison District Court.*—HON. O. D. WHEELER, Judge.

THURSDAY, FEBRUARY 19, 1914.

ACTION against a treasurer on his bond to recover money in his hands, as treasurer, belonging to the county.  Defense that he paid the money upon a warrant issued by the auditor. Held, that the contract on which the warrant was issued was *ultra vires;* that, before the payment of the money by the treasurer, the contract was rescinded, by resolution of the board and the treasurer directed not to pay the warrant, and this before the money was paid.  Judgment and decree for the plaintiff.—*Affirmed.*

*J. S. Dewell,* for appellants.

*Tinley & Mitchell* and *M. B. Bailey,* County Attorney, for appellee Harrison County.

*Roadifer & Arthur,* for other appellees.

GAYNOR, J.—The defendant Ogden was treasurer of Harrison county from January 1, 1902, to January 1, 1909. He was elected first at the general election in November, 1901, and every two years thereafter was re-elected to the office. His term of office was extended one year by joint resolution No. 1 of the Thirtieth General Assembly. Before entering upon the discharge of his duties at each term, he executed a bond to the county, conditioned as required by law, with certain of the defendants herein named as sureties upon the bond.

On the 30th of December, 1901, the defendant W. T. Roden presented to the board of supervisors of Harrison county, the following written proposition:

Understanding that Harrison county desires to purchase or procure land for the purpose of a poor farm or for constructing buildings for the poorhouse thereon, I submit the following proposition: I will sell to the county the west half of the northwest quarter of section No. 21, township 78, range 44 west of the fifth P. M. at the price of $62.50 per acre in cash, or if the county prefers to pay $1,500.00 in cash and the balance March 1, 1902, I will execute to the county a warranty deed with abstract showing title complete in me. I also make the following additional proposition: That in case the above-described land is purchased in the terms therein stated, I will lease to the county for use in connection with said land, the southeast quarter of the northwest quarter of said section 21 for a period of ten years at the annual rental of $3.50 per acre, and the county to pay all taxes thereon during the term of said lease and to keep up all fences if any it desires. I will also in connection with said lease give the county the option to buy said land at any time within the period of ten years at the price of $50.00 per acre and in case of purchase of said additional forty acres of land, the rent shall be computed to such time for the proportionate part of the year after March 1, 1902, or any subsequent year thereafter. Said lease commencing as of March 1, 1902, and continuing for ten years under the conditions named, the rent to be paid annually on March 1st of each year. In case the county should elect to buy such additional forty of land he likewise agrees to give a warranty deed with abstract

showing title complete in him at the time of selling to the county. The county may accept the first portion of the above proposition or may accept the entire proposition as a whole, but the same is subject to a recall by me at any time before actual acceptance by the county by filing notice with the auditor.

Upon the presentation of this proposition to the board, it adopted the following resolution:

Whereas the poor farm heretofore owned by Harrison county having been disposed of and said county being at present without land for a poor farm or land for the purpose of erecting a poorhouse and necessary buildings connected therewith, it is considered proper and necessary for the board of supervisors of said county to procure land for a poor farm and for the purpose of erecting proper and necessary buildings for the poorhouse and appurtenances thereto belonging; therefore, be it resolved by the board of supervisors of Harrison county, Iowa, that said county purchase from W. T. Roden, the following described real estate for the purpose above stated, to wit: The west half of the northwest quarter of section 21, township 78, range 44 west of the fifth P. M., for the sum of five thousand dollars; said W. T. Roden having offered to sell the same to the county for said amount, as shown by his proposition in writing filed in the auditor's office this day. Be it further resolved, that the county auditor is hereby directed to issue a warrant to W. T. Roden for the sum of $1,500.00, as part payment of said real estate, and that the balance thereof be paid March 1, 1902, in accordance with said proposition, and upon the execution by said W. T. Roden of a warranty deed to the county conveying the said land in fee simple accompanied by the abstract showing title complete in him at the time of such conveyance.

Thereupon and on the same day, two members of the board entered into the following contract with the said Roden:

This contract, made this 30th day of December, 1901, between W. T. Roden of Missouri Valley, Iowa, and the county of Harrison and state of Iowa, witnesseth that the first party

has hereby agreed to sell and hereby sells to Harrison county the west half of the northwest quarter of section number 21, township 78 north, range 44 west of the fifth P. M., for the agreed price of $5,000.00 of which the said second party has paid the sum of $1,500.00 in cash, the receipt of which is hereby acknowledged and said Harrison county hereby agrees to pay the further sum of $3,500.00 in cash on or before March 1, 1902, and in consideration of such payment the first party hereby agrees to execute to Harrison county a warranty deed to said premises conveying the title in fee simple with warranty that the title to said premises is complete in the first party at the time of such conveyance, and to defend the title of such premises to said Harrison county, Iowa, against the lawful claims of all persons whomsoever.

Thereupon the auditor of the county issued a warrant, No. 3671, in the amount of $1,500, drawn on the general fund, the only consideration for which being the contract above set out. The said warrant so issued was delivered to the defendant Roden, and by him presented to the defendant Ogden, as treasurer of the county, and by him stamped ''Not paid for want of funds.''

Thereafter, and prior to April 7, 1902, this board of supervisors was removed from office, and their places filled by others. On April 7, 1902, the new board of supervisors passed a resolution as follows:

Be it resolved, that the contract made by and between W. T. Roden and Harrison county, Iowa, on the 30th day of December, 1901, for the purchase of the west half of northwest quarter of section 21, township 78 north, range 44 west of fifth P. M., is hereby rescinded, canceled and declared void, and, further that the auditor of Harrison county is ordered to mail by registered mail or by personal service a copy of this resolution to W. T. Roden. Resolved, further, that the auditor of Harrison county, Iowa, shall serve by registered mail or by personal service, a written demand of W. T. Roden for the return by him of county fund warrant No. 3671, issued to W. T. Roden for $1,500.00 December 30, 1901, in the sum of $1,500.00 or in cash to reimburse the county for said warrant.

Resolved, further, that the county auditor is hereby instructed to take such legal measures as by law provided to recover of said W. T. Roden the sum of $1,500.00 with interest at 6 per cent. per annum from December 30, 1901, for the amount of county general fund warrant No. 3671, issued illegally to W. T. Roden for $1,500.00 December 30, 1901, in part payment for the west half of northwest quarter of section No. 21, township No. 78, range No. 44 west of the fifth P. M., Harrison county, Iowa.

On the same day the following resolution was unanimously adopted:

Resolved, that the treasurer of Harrison county, Iowa, is hereby ordered to refuse to pay to any person presenting county general fund warrant No. 3671, issued to W. T. Roden on December 30, 1901, for $1,500.00. Resolved further that the auditor of Harrison county, Iowa, serve on the treasurer of Harrison county, a copy of this resolution, which shall be his authority to refuse payment of the same.

It appears that on the 7th day of April, 1902, a copy of the resolution aforesaid, rescinding the action of the board of supervisors in authorizing the issuance of warrant No. 3671, and demanding that the treasurer refrain from paying the warrant, was served upon the defendant Ogden, as county treasurer.

It appears that on the 9th day of April, 1902, the defendant Roden served a notice upon the board of supervisors to the effect that he would proceed to collect the balance due under his contract with the board; that on the 31st day of May, 1902, the defendants W. A. Smith, W. J. Burke, and J. S. Dewell served notice upon the county to the effect that the Roden contract had been assigned to them, and further notifying the county that they were ready to fulfill the contract, and that, if the county failed to pay the balance due within thirty days, they would elect to declare the contract forfeited.

It appears that, about this time, one Nelson commenced an action against Harrison county, in which he sought a de-

cree canceling a large number of warrants which he claimed to have been fraudulently issued. This warrant (3671) was involved in that suit, and the district court, upon hearing, ordered the same canceled. Upon appeal to the Supreme Court, the case, in so far as warrant No. 3671 was concerned, was reversed, on the ground that the court did not have jurisdiction, for the reason that W. T. Roden, to whom the warrant was issued, and the State Savings Bank of Missouri Valley, to whom the warrant is claimed to have been paid, were not parties to the suit. See 126 Iowa, 436. This court said in that case:

In a cross-petition against its codefendant Ogden, treasurer, the county alleges that, prior to the commencement of this action, a resolution was adopted by its present board of supervisors declaring the invalidity of said contract, and directing said Ogden, as county treasurer, not to pay the said warrant (being warrant No. 3671) so issued for the sum of $1,500, and that a copy of said resolution was duly served upon him (said Ogden). It is then alleged that, notwithstanding such direction and order, and since the commencement of this action, said Ogden has paid said warrant in full. The prayer is that said warrant be adjudged to have been illegally issued, and that the same in the hands of the said Ogden be canceled and held for naught. The relief thus prayed for was granted by the decree of the district court. In this, we think, there was error. The contract was made with Roden, and the warrant was issued to him. He is not made a party to this action, and it is not competent for the court to determine upon the validity of the contract or warrants in his absence. Ogden was not legally restrained from making the payment of the warrant when presented for that purpose. The direction of the board could not have any such effect. That he paid the warrant at his peril, in view of the controversy then pending concerning the validity of the same, and the resolution of the board asserting the invalidity thereof, may be true, but it will be time enough to decide that point when, if ever, the legality of the transaction shall have been judicially determined as between all the parties in interest.

It appears that on the 16th day of August, 1902, the defendant Ogden, as treasurer, paid said warrant No. 3671 to

said State Savings Bank of Missouri Valley; that, at the time
he paid the warrant, he exacted an indemnity bond from the
bank to save him from liability because of the payment; said
bond being as follows:.

Whereas, on December 30th, 1901, the board of super-
visors of Harrison county, Iowa, issued to W. T. Roden, county
warrant No. 3671 for $1,500.00 on account of part payment
for the west half of the northwest quarter of section twenty-
one (21), township No. seventy-eight (78), range No. forty-
four (44), which warrant is still outstanding and unpaid; and
whereas, some question has been raised as to the legality of
said warrant and there is some doubt on the part of E. F.
Ogden, treasurer of Harrison county, whether or not said
warrant should be paid; and whereas, the holders of said war-
rant contend that the same is unpaid and the amount called
for justly due them: Now in consideration of the payment of
said warrant, together with the accrued interest thereon as
provided by law by the said E. F. Ogden, treasurer, we hereby
agree and undertake to save said Ogden harmless and from all
damages that he may sustain and for all cost that may be
legally adjudged against him, if any, by reason of said pay-
ment of said warrant, provided that in case any suit should
be brought against him on account of the payment of said
warrant, he shall immediately notify the undersigned and pur-
sue the line of defense indicated by them or allow them to in-
terpose for him such defenses as they may elect. And if, on
final determination of any such case against him, he is com-
pelled to pay or account for any money so applied on said
warrant, this undertaking shall be full indemnity therefor.

At the January settlement, 1903, defendant Ogden, as
treasurer, reported this warrant as paid, and asked that he
be credited on his account with the county for the amount
paid. This the board of supervisors refused to do, and the
treasurer testifies that they threatened to remove him from
office if he did not account to the county in settlement for the
amount of money which he claimed he paid out on this war-
rant. Thereupon the treasurer returned the warrant to the
bank and demanded a refunding of the amount paid, and,

some time in April of that year, the warrant was returned
and accepted by the bank, and W. J. Burke, cashier of the
bank, paid the county treasurer the amount thus received
on the warrant, for which the treasurer executed a receipt.
The bank then continued to carry the warrant, and made no
further demand for payment until the semiannual settlement
of 1905.   Just before this settlement was made, the treasurer
obtained a certified statement of his account with this bank,
and from this statement it appeared that the bank had charged
him, as treasurer, with the amount of the warrant, $1,551.50.
As soon as the treasurer received this statement from the
bank showing that he had been charged with the amount of
this warrant, he returned the statement to the bank with the
following note: ''Bill, credit this back to my account and
send me a new statement without showing it.''  The ''Bill''
referred to in the note was W. J. Burke, cashier of the bank.
It appears that the bank refused to credit this back to the
treasurer, but the bank made a new statement, leaving this
item off, and covered the amount thereof by a deposit made by
the president of the bank in favor of the treasurer.   This made
the balance due from the treasurer to the county · complete.
This money was deposited by the president of the bank for the
purpose of enabling the treasurer to make settlement with
the board of supervisors.   The treasurer did not, at that time
communicate to the board the fact that this warrant had been
charged to his account by the bank.

The last report made by the treasurer to the board was
made just before he went out of office.   In this report, he
deducted the amount claimed to have been paid for this
warrant, and certified that his statement was correct and
showed a correct balance on hand, and this is the balance that
the county now claims against him.   It appears that at no
time did the board of supervisors, acting for the county,
recognize this alleged payment of this warrant to be a proper
credit on the treasurer's account with the county, but always
repudiated it, and that, at every settlement made with the

board up to this final settlement, the treasurer produced the money in lieu of the warrant, and made settlement upon that basis with the board.

This action is brought by the county against the treasurer and his bondsmen to recover the amount of balance claimed to be due from the treasurer to the county on his final settlement made with the county at the time he retired from office. The bank and the parties who executed the indemnity bond to the treasurer are made parties, that it may be determined whether or not this warrant relied upon by the treasurer is a valid warrant, and such as the treasurer was authorized to pay, under the law, and entitled to credit therefor by reason of such payment on his final settlement. Roden was made a party, that it might be determined whether or not the contract which he entered into with the board, and which was a basis for the issuance of the warrant, was a valid contract, and one which ought to be recognized and enforced. All these were proper and necessary parties for the purpose of determining whether or not the treasurer was entitled to credit upon his account with the county for the amount of this warrant alleged to have been paid by him.

1. MUNICIPAL CORPORATIONS: counties: action on treasurer's bond: parties.

It is true that an action might have been brought at law directly against the treasurer and his bondsmen to recover the amount claimed to have been due upon final settlement, but equity, in order to avoid a multiplicity of suits, takes hold of the whole controversy, that the rights of all parties may be considered, recognized, and disposed of in one action. The suit on the last bond was unquestionably properly brought, and, as they are the only official bondsmen who have appealed to this court, any errors committed in joining bondsmen of. former years in the suit is not prejudicial to their rights. This is especially true in view of the disposition made of the case in the court below. If it be true, as contended for by plaintiff, that the State Savings Bank received this money

2. SAME: equitable jurisdiction: parties.

from the treasurer wrongfully, equity will require it to pay it back, and, if it appear that the treasurer concealed from the board the payment of this warrant, and that it was wrongfully paid in fact, and that the State Savings Bank was a party and connived with him in the payment and in the receipt of the money, full justice could not be done to all the parties without having them before the court, and this is also true of the sureties upon the bond given to the treasurer to induce him to part with the county's money. It is true that the county might have proceeded directly against the bank on the ground of a conversion of funds belonging to the bank trusted to its care. The money in the hands of the treasurer belonged to the county, and, if the bank wrongfully charged this warrant to the treasurer against the money held in trust by it for the county, this would amount to a conversion, on the part of the bank, of so much of the county's money, for which the action would lie.

All these matters are so closely interwoven, and the rights of each party so closely depend upon the disposition of the case as to each, that equity properly assumed jurisdiction over all the parties, that the rights of all might be determined and disposed of without a multiplicity of suits.

We think there was no misjoiner of the parties or cause of action here entitling the defendants to a reversal. It is a settled rule of equity that, when it has once obtained jurisdiction over the subject-matter, it will determine all questions material to the accomplishment of full and complete justice between all the parties.

3. SAME.

The money in the hands of the treasurer was held by him in trust as an agent and officer of the county, and it was his duty to account to the county therefor. He placed it in this bank for safe-keeping. If this bank converted any of the trust funds so placed in their keeping, they became liable to the county as for a conversion of the trust fund. The sureties on the bond, given by the bank to induce the treasurer to turn this

4. SAME: conversion of county funds: liability.

money over to the defendant bank, were parties to the conversion, and liable upon the bond so given. See *Young v. Pecos County*, 46 Tex. Civ. App. 319 (101 S. W. 1055); *Cotton v. Dacey* (C. C.) 61 Fed. 481; *McDowell v. Lloyd*, 22 Iowa, 448; *Clinton v. Shugart*, 126 Iowa, 179.

The district court, on the final submission of the cause, entered the following decree:

Finding for the plaintiff in the sum of $1,830.27, and costs taxed at $————— together with interest at 6 per cent. per annum from said date. Said judgment and decree being in the first place against the State Savings Bank of Missouri Valley, Iowa, and secondly from the defendants, the sureties of the official bond of said Edward F. Ogden for the term beginning January 1, 1907, said defendants being as follows, J. C. Milliman, W. H. Johnson, B. F. Freeman, Josiah Coe, H. B. Kling, S. J. Patterson, T. F. Jordan, W. T. Preston, J. S. Dewell, Almor Stern, W. J. Burke, W. A. Smith, Fred Brown, Geo. A. Kellogg, John Young, John Clinkenbeard, A. Spooner, James Wilkinson, H. D. Lewis, W. S. Kelly, and dismissing as to all other parties. Further decreeing that the defendant, Edward F. Ogden and the State Savings Bank of Missouri Valley, Iowa, be held primarily liable for said judgment, together with interest and costs, and that all other defendants named are held as secondarily liable, or as sureties, and decreeing that execution first issue against defendant Ogden and State Savings Bank, and thereafter against the parties held secondarily liable, and further decreeing that in such case, execution should issue in favor of such sureties or any of them against the said Ogden and State Savings Bank.

From the decree so entered, the defendants adversely affected have appealed, and contend, first that the contract for the purchase of the poor farm, with buildings thereon, was valid, and that the warrant issued thereunder was valid.

The first proposition then relates to the validity of the action of the board of supervisors in the purchase of this land from Roden for a poor farm.

Section 2241 provides:

The board of supervisors of each county may order the establishment of a poorhouse in such county whenever it is

deemed advisable, and also the purchase of such land as may be deemed necessary for the use of the same, and may make the requisite contracts and carry such order into effect, provided the cost of said poorhouse and land, if in excess of $5,000.00, shall be first estimated by said board and approved by a vote of the people.

Section 423 provides:

The board of supervisors shall not order the erection of . . . a poorhouse when the probable cost will exceed $5,000.00, nor the purchase of real estate for county purposes exceeding $2,000.00 in value, until a proposition therefor shall have been first submitted to the legal voters of the county, and voted for by a majority of all persons voting for and against such proposition at a general or special election.

From these statutes, it is apparent that the board of supervisors, as such, have no power to purchase land for poorhouse purposes and erect a poorhouse thereon in excess of $5,000, unless the same is approved by a vote of the people. The purchase of land is not the establishment of a poorhouse. The purchase of the land independent of the poorhouse cannot exceed $2,000. It is apparent from these two sections that the purchase of the land and the erection of the poorhouse cannot exceed $5,000. The board of supervisors undertook to expend $5,000 in the purchase of land, without submitting the question to a vote of the people, and without making any provision for the erection of a poorhouse. It is the duty of the board under this statute, to first estimate the cost of the poorhouse contemplated, and the land to be used in and about the same. If the estimated cost of the entire proposition exceeds $5,000, the board have no power to enter into any contract for the establishment of a poorhouse, until the same has been approved by a vote of the people. One of these sections is a limitation upon the other. The expenditure of $5,000, without any provision for the erection of a poorhouse thereon, is clearly, under these statutes, in

5. SAME : purchase of land for poorhouse: contracts: ultra vires.

excess of the power of the board to make, without first submitting it to a vote of the people. It is contended, however, that the $5,000 purchased not only the land, but buildings upon the land. This was not contemplated by the board at the time of the purchase. The proposition stated was: "Understanding that Harrison county desires to purchase or procure land for the purpose of a poor farm, or for the construction of buildings for a poorhouse thereon, I submit the following proposition."

The resolution provided: "The county being at present without land for a poor farm or land for the purpose of erecting a poorhouse and necessary buildings connected therewith, it is considered proper and necessary for the board of supervisors of said county to procure land for the poor farm for the purpose of erecting proper and necessary buildings thereon for a poorhouse, and appurtenances thereunto belonging. Be it resolved, that the county purchase the following described real estate for the purposes above stated." Upon that they proceeded to purchase land at a cost of $5,000, evidently intending thereafter to erect upon said land a poorhouse and appurtenances thereunto belonging, without any estimate of the cost, and without any provision for funds to meet such expense.

Further the buildings on the land as disclosed by this record are no way suitable for, nor could they be made suitable for, occupancy as a poorhouse, and it is apparent that if they made any estimate at all of the cost of erecting a poorhouse, that they exceeded their jurisdiction in expending $5,000 for land upon which to erect the same, and we think, therefore, the contract was *ultra vires;* one that the board of supervisors had no power to make and bind the county in the making of it, and any payment, or order for payment, issued in furtherance of the scheme, was also *ultra vires;* and that the county was not estopped after issuing the warrant in partial fulfillment of such a void contract, in setting up the defense of *ultra vires.*

It is next contended that the county is estopped, after a warrant upon its treasury has been issued, to set up a defense of *ultra vires,* and that the resolution of the board of supervisors attempting to rescind the contract and notice to the treasurer not to pay the warrant was without legal effect. A warrant does not constitute a new debt, or evidence. of a new debt, but is only the prescribed means for drawing money from the municipal treasury to pay an existing debt, and county warrants are valid instruments only when the board of supervisors had legal authority to issue them, or to contract the obligation upon which they are founded, and are not binding when issued in violation of law, or in fulfillment of a contract that the board are prohibited from making. See *Sault Ste. Marie v. Van Dusan,* 40 Mich. 429; *Jefferson County v. Arrighi,* 54 Miss. 668; *Nash v. St. Paul,* 11 Minn. 174 (Gil. 110); *People v. Flagg,* 17 N. Y. 584; *Webster County v. Taylor,* 19 Iowa, 117, in which Judge Dillon, speaking for the court, said: "The county is not bound by the unauthorized act of the county judge or other county officer with respect to a matter wholly beyond the corporate powers and duties. The written statute law is a source and charter of its power. Beyond this it cannot go. If it undertakes, through its officials, to do so, the county—the people of the county—are not bound. Hence the county is not estopped, although the warrant is issued, from making the defense of *ultra vires.*" See cases therein cited.

The board of supervisors are the financial agents of the county, charged, under the statute, with general care and management of the county property, funds, and business. The county treasurer, under section 482, is charged with the duty of receiving money payable to the county and disbursing the same on warrants drawn and signed by the county auditor, and not otherwise, and it is his duty to keep a true account of all receipts and disbursements and hold the same at all times

*6. SAME: contracts: warrants.*

*7. SAME: rescission of contract: payment of warrant.*

ready for the inspection of the board of supervisors. The basis for the warrant is the order of the board. It is but the evidence of indebtedness. It is prima facie evidence that the county is legally indebted to the holder of the warrant, but is not conclusive upon that point. They are not negotiable, but may be assigned under the statute, but, in the hands of the assignee, are subject to all defenses which exist in favor of the county. The money in the hands of the treasurer is subject to the order of the board. He is only a disbursing officer. The warrant is his authority for disbursing, but, before the disbursement has been made, the order for disbursement may be recalled, and, the warrant being based upon an order of the board of supervisors, the board, having control of the funds out of which the warrant may be paid, may prohibit the treasurer from using the funds for that purpose by proper order made upon him. This does not destroy the debt, if any, legitimately existing, but it prohibits the treasurer from disbursing the money upon the order, evidenced by the warrant as originally made; that is, it prohibits the treasurer from using the county's funds in his hands, which are subject to the order of the board, in payment of the warrant. This becomes more apparent when it is remembered that the warrant is not an indebtedness; that by the issuance of the warrant no new debt is created; that they are but the evidence of a pre-existing indebtedness, and constitute no final adjudication, as against the county, of the claims which they represent.

The county auditor is but a ministerial officer in the matter of issuing warrants on the county treasury. He acts under the direction of the board in this matter. Without the sanction of the board, he has no authority to issue a warrant upon the treasury for the payment of money for any purpose, and the only authority for the treasurer to pay money out of the treasury is upon the warrant so issued. Of course, our statute makes some exceptions in regard to payment of

county money without the action of the board (for instance jury fees), but this is the general rule. This order for the payment of money having been rescinded by the board of supervisors, under whose control the property and money of the county is, the right of the treasurer to pay the county's money upon the order so rescinded ceased as soon as he received notice of such order. His authority to pay upon the warrant was taken away by the board, from whom he, in the first place, obtained the authority to pay. See *Dey v. Lee,* 49 N. C. 238; *State v. Bowman,* 66 S. C. 140 (44 S. E. 569); *State v. Cook,* 43 Neb. 318 (61 N. W. 693); *Abernathy v. Phifer,* 84 N. C. 712; *Frankl v. Bailey,* 31 Or. 285 (50 Pac. 186); *People v. Klokke,* 92 Ill. 134.

In *State v. Cook, supra,* the Supreme Court of Nebraska, in discussing questions similar to those in this case, said:

In the absence of a statute conferring special characteristics upon warrants, the authorities are practically unanimous that such instruments are merely devices for properly drawing money from the treasury; they are little more than certificates of indebtedness. 'The warrant is not intended to constitute a new debt, or evidence of a new debt, . . . but is the prescribed means the law has devised for drawing money from the treasury.' See *Dana v. City of San Francisco,* 19 Cal. 486. An indorsee may sue upon such warrant, not because he has title under the law merchant, but because the indorsement amounts to an assignment of the debt upon which the warrant is issued. The auditing of claims and issuing of warrants therefor are not such settlement as have the force of a judicial proceeding, or to estop the corporation issuing the warrant. . . . This must be true when the body allowing the claim has not been given authority to act judicially in determining the legality of the claim. While money remains in the possession of the treasurer, the authorities having the power of disposing of the same have entire control of it, and the rescission of an order directing its payment before the payment is in fact made, is, as between the holder and the treasurer, a defense to the latter.

This opinion, referring to *People v. Klokke, supra,* says:

The case . . . is very instructive with reference to the questions before us. . . . There had been a disputed account between the county and the relator. In the course of the controversy, a proposition was made to compromise by the payment of a certain sum, and a resolution had been passed authorizing the payment of a certain sum. Before the proposition to compromise had been accepted, the commissioners rescinded the resolution, and that court held that, under the circumstances, the clerk and treasurer would not be compelled by mandamus to issue or pay the warrant. It was further held that whether the board could rightfully rescind the order could not be determined in that action, but that the clerk and treasurer were merely ministerial officers; and, whether or not the board could rightfully rescind the order, the resolution rescinding it deprived these officers of their only authority in the premises. . . . The issuing of the warrant did not change the nature of the indebtedness. The bank took it subject to all defenses which might have been urged had it been issued to the waterworks company. Before its payment, the council learned that it had been induced to allow the claim by reason of false representations. . . . It then directed its ministerial officers not to pay the warrant. . . . It is not for the treasurer to review the action of the council. and determine for himself whether or not a claim is justly payable to a particular person; he acts only under the authority given him by the council acting in accordance with the law, when he makes the payment. Without such authority, a payment by him would be wrongful.

From these authorities it follows that, the authority to pay the warrant having emanated from the board of supervisors, and this being the only authority which the treasurer had in the first place to pay the county's money upon the contract, out of which the claimed indebtedness arose, the resolution rescinding the order deprived the treasurer of the only authority which he had for disbursing that much of the county's money. See *People v. Johnson,* 100 Ill. 537 (39 Am. Rep. 63); *Tucker v. Justices,* 35 N. C. 434. As bearing upon

the question above discussed, see, also, *Clark v. Polk County*, 19 Iowa, 248, and cases therein cited.

We hold, therefore, that the treasurer in this case had no authority to pay this warrant. The only authority he had in the first place to pay it emanated from the board of supervisors, evidenced by the warrant issued on their order by the auditor of the county. But it appears that, before the payment was made, the authority to pay, as evidenced by the warrant, was rescinded by the board, who alone control the disbursements of the people's money, and that thereafter his authority to pay ceased, and a payment made after notice of such order was an unauthorized and a wrongful payment. It was not for him to determine whether the board could, or did, rightfully rescind the order previously made, and any payment made by him thereafter was at his peril. His authority to pay having been taken away by the resolution of the board, he stood the same as if no order had been made. His authority was taken away by the action of the board from whom he, in the first place, derived the authority to act at all. His payment, after the order had been rescinded, was without authority, and affords him no protection.

It is next contended that this action is barred by the statute of limitations. This defense is not available, for the reason that the treasurer, at each settlement subsequent to the payment of this order, accounted to the county for all money received by him, and therefore no cause of action accrued against him until the final settlement, when he finally and absolutely refused to account for so much of the money received by him as was claimed to have been paid upon this warrant. Then, for the first time, the cause of action accrued against him in favor of the county.

8. SAME: limitation of actions.

It is immaterial that these payments were made under threat of removal from office, for the reason that the cause of action rests on a failure to account for the money received

by him as treasurer, and this failure did not occur until his final settlement. It must be borne in mind that, so far as this action against the treasurer is concerned, it is not bottomed upon the warrant, nor upon a violation of his duty involved in the payment of the warrant. It rests upon his failure, upon final settlement, to account to the county for the money received by him as treasurer. He claimed the right to offset this payment against the amount due. He asked that he be credited with the amount so paid, as against the amount so due. In this way only did the legality of the warrant and its payment become involved in the suit. He was withholding this money from the county on the sole ground that he had paid this warrant.

When he paid it, he received the bond from the other defendants to indemnify him against loss, and so they became involved in the suit only in so far as involved the legality of the payment of this warrant. The money paid upon this warrant was paid on an unauthorized debt, and therefore may be recovered back from the parties so wrongfully taking and receiving it with knowledge of the illegality. See Dillon on Municipal Corporations (5th Ed.) section 857, and cases hereinbefore cited.

9. SAME: wrongful payment of warrant: recovery.

It is next contended that the rights involved in this suit were adjudicated and determined in the case of *Nelson v. Harrison County,* 126 Iowa, 436. A casual reading of this case will show that this claim is not well founded. The court expressly found that, as to this warrant, the court below and the Supreme Court had no jurisdiction to determine the matters in controversy, for the reason that the party to whom the warrant was issued and the party to whom the money had been paid were not before the court.

10. SAME: prior adjudication.

It is next claimed, but not argued, that the court erred in admitting certain evidence upon the trial of the cause

below. This complaint is not available, for the reason that the cause is triable *de novo* here, and we are required to consider, and do consider, only such evidence as was properly admitted upon the trial, and such as was material, competent, and relevant to the issues tendered. The court below was not required to pass upon these objections, nor did it, and the case is not triable on error here. In all equity trials, the evidence is taken subject to objection, and only such considered by the court as is relevant, material, and competent.

11. APPEAL OF EQUITABLE ACTIONS: trial de novo: evidence: assignment of error.

There are other errors assigned, but we think they are sufficiently disposed of by what has been heretofore said.

We find no ground for disturbing the decree of the court below, and the same is therefore—*Affirmed*.

LADD, C. J., and DEEMER and WITHROW, JJ., concur.